## THE CATLIN COAL COMPANY

*v.*

## HENRY LLOYD.

*Opinion filed June 17, 1899.*

1. POSSESSION—*possession of surface does not carry possession of minerals if titles are severed.* Where the title to the surface has been severed from the title to coal and minerals in place and never re-united with it, neither estate is susceptible of possession by mere occupancy of the other estate.

2. LIMITATIONS—*section 4 of the Limitation act requires possession.* One taking possession of the surface of land and residing thereon for seven years, as provided in section 4 of the Limitation act, acquires no title to coal and minerals in place, the title to which has been previously severed from the title to the surface, even though the deed under which such possession is held makes no reservation of such coal and minerals.

3. DEEDS—*fact of interlineation or erasure raises no presumption of law.* The mere fact of an interlineation or erasure appearing in a deed does not, of itself, raise any presumption of law either for or against the validity of the deed, but the question when, by whom and with what intent such changes were made is one of fact to be submitted to the jury.

4. SAME—*party offering altered instrument should explain alterations.* An alteration of a deed should be explained by the party claiming the benefit of the instrument, and if it is suspicious in appearance and satisfactory explanation is not made, the proper conclusion is one of fact against the validity of the instrument.

5. SAME—*effect of erasure of consideration for bargain and sale deed.* A deed made in 1863, in the ordinary form of bargain and sale then in use, which required a valuable consideration to support it, is not sufficient foundation for a claim of title where three distinct considerations have been inserted in the deed, all of which were erased, leaving it wholly without expressed consideration and no consideration is proved by other evidence.

APPEAL from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

W. J. CALHOUN, and H. M. STEELY, (J. B. MANN, of counsel,) for appellant.

LAWRENCE & LAWRENCE, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee had a judgment in ejectment in this case against appellant for the possession of an undivided five-sixths of the coal and minerals underlying the east half of the south-east quarter of section 34, in township 19, north, range 12, west, in Vermilion county. We reversed the judgment and remanded the cause to the circuit court for further proceedings in conformity with the opinion then filed. (*Catlin Coal Co.* v. *Lloyd*, 176 Ill. 275.) After the cause was re-instated in the circuit court, the plaintiff, by leave of court, amended his declaration by striking out "the undivided five-sixths," and adding, "the east half of the south-west quarter and the south-west quarter of the south-west quarter of section 35," in the same town and range, so as to claim title to the whole of said first tract and one hundred and twenty acres additional. To this amended declaration a plea of the general issue was filed, and there was a trial, ending with a verdict in favor of plaintiff. After the verdict, on a motion for a new trial, plaintiff was permitted to again amend his declaration by striking out a portion of the lands in the first tract. The motion for a new trial was overruled, and judgment was entered that plaintiff was owner in fee simple, and that he recover from the defendant the following premises, and the possession thereof, with costs of suit, to-wit: "All of the east half of the south-east quarter of section 34 south of railroad, and east half of south-west quarter and south-west quarter of south-west

quarter of section 35, town 19, range 12, west, in Vermilion county, Illinois."

At the trial both parties claimed title, as before, from Harvey Sandusky, who was conceded to have been the owner in 1863. It was also proved, as it was on the former trial, that said Harvey Sandusky had conveyed the coal and mineral underlying said lands in 1863 or 1864 by one or the other of the deeds hereinafter mentioned, duly executed by himself and wife and recorded, and thereby severed the estate in the coal and mineral from the estate in the surface, and that after such severance he had no interest in the estate so conveyed. In 1880 the plaintiff, who had acquired title in the surface, caused the estate in the coal and mineral under these lands to be assessed and taxed separately from the surface, and ever since that time they have been so· assessed and taxed, and the plaintiff has not paid the taxes on the estate in the coal and mineral so assessed and taxed.

When the case was here before we considered and settled the question whether, after such severance, a possession of the surface of the land would carry with it a possession of the coal and mineral in place thereunder, and we held, upon a review of the authorities, that such possession of the surface would not constitute a possession of the separate estate in the underlying coal and mineral. Nevertheless, at the second trial plaintiff claimed title to the coal and mineral by possession of the surface for seven years under section 4 of the act in regard to limitations, which is as follows: "Actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual residence thereon for seven successive years, having a connected title in law or equity, deducible of record, from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such land for the non-payment of taxes, or from any sheriff, marshal or other person authorized to sell such land on

execution, or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken, as aforesaid; but when the possessor shall acquire such title after taking such possession, the limitation shall begin to run from the time of acquiring title." (Rev. Stat. chap. 83, sec. 4.)

Plaintiff had been in possession of the surface of the land, but disclaimed any title under any other section of the Limitation act than this section. To sustain the title so claimed by limitation, he proved that Harvey Sandusky was adjudged a bankrupt; that James C. Lake, registrar in bankruptcy, conveyed to Joseph G. English, assignee of. said bankrupt, March 23, 1872, by general deed, all the estate, real and personal, that Harvey Sandusky had on August 25, 1871, and that the district court of the United States, by its order, authorized said assignee to sell all of the real estate of said Harvey Sandusky. He also offered in evidence a deed dated April 22, 1873, from said Joseph G. English, assignee of Harvey Sandusky, bankrupt, to Abraham Sandusky and William Sandusky, conveying the lands described in the amended declaration, in pursuance of a sale thereof under the said order. He also offered two deeds from William Sandusky and wife and Abraham Sandusky and wife to him,—one dated March 10, 1876, for the east half of the south-east quarter of section 34 and the west half of the south-west quarter of section 35, and the other dated March 13, 1880, for the east half of the south-west quarter of section 35, all in township 19, range 12, west. These deeds were accompanied by proof that William and Abraham Sandusky had possession of the surface after their purchase, and that plaintiff had possession of the surface of the several tracts from the dates of his deeds, respectively, and that he resided on the same on the west eighty of section 34.

Section 4 of the Limitation act, under which plaintiff claimed, requires possession of the premises and estate sought to be recovered, and he could not establish title

to them under that section without possession. In *Martin* v. *Judd*, 81 Ill. 488, it was said, concerning the same language used in this section (p. 492): "But the party having title deducible of record must have possession, and as there are various methods of acquiring and holding possession of real estate, the act advanced one step, and required that the possession must be held in a particular manner,—that is, by actual residence upon the land." The evidence proved that there were two estates held by separate and distinct titles in severalty, and in such case a possession of the surface does not extend to a possession of the other estate, nor does the possession of the estate in the coal and mineral extend upward to embrace the other estate. The evidence did not prove possession by plaintiff of the coal and mineral. The deed from the registrar to the assignee conveyed nothing but the interest which Harvey Sandusky had at the time of his bankruptcy, and the assignee could convey and the purchaser take no greater rights than were possessed by the bankrupt. It is not pretended that Harvey Sandusky had any right, interest or title to the coal, or any part of it. On the contrary, it was conceded by both parties on the trial that he had parted with the coal many years before, and had severed that estate from the title generally, by his deed. The deed from the assignee to William Sandusky and Abraham Sandusky, and their deeds to plaintiff, did not serve to re-unite the two estates in the plaintiff, but they remained separate as before. Plaintiff was in possession only of the estate conveyed to him, and defendant could not have brought an action against him within seven years next after he took such possession, or at any other time, as contemplated by the statute.

The view of the trial court was explained to the jury by the third instruction, and it was, in substance, that although in a case of this kind the actual possession of the owner of the surface will not constitute possession of the coal and mineral beneath the surface, yet, if the

deed from the assignee, under the order of the district court, made no exception or reservation of the coal and mineral, and the grantees under such deed resided on the land seven years, during which no action was brought by any other person to recover the possession of the coal and mineral and no other person actually entered upon and took possession of the coal and mineral, then title in fee simple would be acquired under the Limitation act. The instruction was wrong. Title could not be acquired under the Limitation act without possession, no matter what the deed purported to convey. If possession of the surface would not constitute possession of the coal and mineral under one section of the statute it would not under another. If a grantee of Harvey Sandusky of the same premises could never have possession of the coal and mineral by occupying the surface, we do not see how possession could be so acquired under a conveyance from his assignee or under an order of court. It makes no difference, as to the fact of possession, whether it is under a deed from one person or from another or by authority of court. Where the titles are separate and distinct and have not been re-united, each is incapable of possession by the mere occupancy of the other.

Each of the parties claimed record title from Harvey Sandusky to the coal and mineral underlying that part of the east half of the south-east quarter of section 34 south of the railroad. The defendant read in evidence a deed from said Harvey Sandusky dated May 10, 1864, and by a chain of conveyances proved title to the coal and mineral under all the lands in question; but the plaintiff offered in evidence a deed from said Harvey Sandusky to Josiah Sandusky of the coal and mineral under this tract, dated December 14, 1863, which was prior in point of time to the deed under which defendant claimed. This deed to Josiah Sandusky was objected to, when offered in evidence, on account of several erasures and alterations. In the place for the consideration there had been the

words "four thousand three hundred," and they had been erased by drawing a line through them. Immediately above them were interlined the figures "$750.00," erased in like manner, and on the left hand margin opposite the same line there were the figures "$1000.00," also erased by the same method. In the description of the lands there was also an erasure of the words and figures "nineteen (19)" and there was interlined above them "eighteen." The objection was overruled and the deed admitted in evidence. There was no direct proof when or by whom or with what intent the erasures or alterations were made, and they were not noted in any way on the instrument.

Josiah Sandusky died thirty years ago, leaving heirs, and neither he nor his heirs ever paid any taxes or were in possession, or, so far as appears, ever made or asserted any claim to title under the deed. Quit-claim deeds of these heirs to said William and Abraham Sandusky were offered in evidence to connect plaintiff with the altered deed, under the claim that the title would enure to him by virtue of the covenants of warranty, and it appeared that as to two of these quit-claim deeds, at least, they were loaned for the purpose of the law-suit, under the agreement that if they were of any value in the suit the heirs were to be paid what they were worth, and in case they were not of any value there was to be no pay. Relative to the deed bearing the alterations and erasures, the court instructed the jury that being prior in point of time to the title of defendant it was the superior title, provided the jury believed the deed was a valid deed, and that the alterations appearing on its face were made before its delivery or were made without any intent to defraud or injure any person, and that the jury had the right to determine, under the proof and circumstances, when the apparent changes in it were made, by whom, and the intent with which made. While the instruction referred the jury to the evidence for explanation of the apparent alterations, there was none which tended in

any way to explain them, but such evidence as there was tended to prove that the deed was not regarded as valid by the grantee or his heirs, since neither he nor they ever took possession or claimed anything under it.

It is argued on one side that the court erred in admitting the deed in evidence because the law presumes the alterations to have been made after its execution, and plaintiff was bound to explain the alterations and erasures satisfactorily before it was admitted in evidence. On the other hand, it is contended that where nothing to the contrary appears, the alterations are presumed, in law, to have been made at the time the deed was executed. There have been many different expressions in different jurisdictions concerning the presumption in such cases in absence of proof. The question has been considered in this court, and the rule has been adopted which the learned author of the article on alteration of instruments in 2 Am. & Eng. Ency. of Law, (2d ed.) 274, says is best supported by reason and to which the authorities seem tending. It is, that the mere fact of an interlineation or an erasure appearing in an instrument does not, of itself, raise any presumption of law either for or against the validity of the writing, but that the question when, by whom and with what intent it was made is one of fact to be submitted to the jury. In *Gillett* v. *Sweat*, 1 Gilm. 475, it was said (p. 489): "The law upon that subject is, that if any ground of suspicion is apparent upon the face of the instrument the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom it was done, and the intent with which the alteration was made, as matters of fact to be found by the jury." In *Walters* v. *Short*, 5 Gilm. 252, the court refused to adopt the presumption that the alteration was contemporaneous with the execution of the instrument, but left it to be explained by inspection of the instrument, with other evidence, as a question of fact. In *Reed* v. *Kemp*, 16 Ill. 445, these cases were reviewed and

the question considered, and it was decided that there is no presumption of law whether an instrument has been altered from its condition when executed, but that it is a question of fact, and that the party producing such an instrument is called upon for explanation. In subsequent cases the presumption is sometimes spoken of as one of law, but in view of these decisions it must be regarded as a question of fact. In dealing with it as such a question, however, the court has uniformly required that the alteration or interlineation shall be explained by the party claiming the benefit of the paper, and if it is suspicious in appearance and satisfactory explanation not made, the proper conclusion is a conviction of fact against the instrument. *Hodge* v. *Gilman,* 20 Ill. 437; *Pyle* v. *Oustatt,* 92 id. 209; *Montag* v. *Linn,* 23 id. 503.

An inspection of the deed might be sufficient to show that the change in the description was before or at the time of the execution, since it made the number of the township harmonize with the previous number given in the deed. The erasures of the consideration, however, were not only not explained, but they left the deed without any consideration, and there was no proof of any. It was made December 14, 1863, and is the ordinary deed of bargain and sale in use at that time. Such a deed required a valuable consideration to support it. (6 Am. & Eng. Ency. of Law,—2d ed.—683; 9 id. 102; 2 Bl. Com. 296; Devlin on Deeds, sec. 23; *Wood* v. *Beach,* 7 Vt. 522; *Wood* v. *Chapin,* 13 N. Y. 509.) There is no ground for saying that the word "dollars," which still appears in the deed, was intended to represent any consideration. Three separate amounts which were written in as the consideration have all been erased, showing a clear intention to strike out all consideration from the deed. It was left absolutely without the consideration required by law to support it, either expressed on its face or proved by other evidence. It was insufficient as a foundation for plaintiff's claim of title as to the tract of land mentioned in it, if it

should be held that he connected himself with it by the quit-claim deeds before mentioned.

Various other questions are raised and argued, but we see no reason for considering them, because the finding of the jury was palpably wrong under the evidence and the court should have granted a new trial.

The judgment of the circuit court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.     *Reversed and remanded.*