HENRY LLOYD

*v.*

WILLIAM SANDUSKY *et al.*

</div>

*Opinion filed June 16, 1903—Rehearing denied October 23, 1903.*

1. APPEALS AND ERRORS—*exception to overruling of demurrer is unnecessary.* An exception to the overruling of a demurrer is not necessary in order to enable an appellate tribunal to review the action of the court, since the alleged error is one of law with respect to the pleadings, which are part of the record proper and may be reviewed without exceptions appearing of record.

2. DAMAGES—*measure of damages for breach of covenant.* The measure of damages for breach of a covenant in a deed is what the plaintiff actually lost by such breach.

3. SAME—*basis for estimating damages where title partially fails.* The value of the property at the time of the conveyance is the basis for estimating damages in an action for breach of covenant where title partially fails.

4. EVIDENCE—*statements of amount and receipt of consideration may be explained.* The statements in a deed of the amount and the receipt of the consideration are formal recitals, the legal operation of which is to prevent a resulting trust, and they may be explained, varied or contradicted by parol evidence.

5. SAME—*what a competent defense to suit for breach of covenant.* In an action for breach of covenant of seizin upon the ground that the title to the soil and to the minerals had been severed and the latter sold to another, it is competent to show in defense that the grantee purchased with knowledge of such severance and that the consideration paid was merely for the surface.

6. PLEADING—*when an allegation is surplusage.* In an action for breach of covenant, which is defended on the ground that there had been a previous severance of the title as to the soil and minerals, an allegation in a plea that the reservation of the title to the minerals was omitted from the deed by mistake may be regarded as surplusage, as presenting facts cognizable only in a court of equity.

HAND, C. J., and WILKIN and CARTWRIGHT, JJ., dissenting.

*Lloyd* v. *Sandusky,* 95 Ill. App. 593, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

LAWRENCE & LAWRENCE, for appellant.

H. M. STEELY, and E. R. E. KIMBROUGH, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action of covenant on two deeds, brought by appellant, against the appellees, in the circuit court of Vermilion county. The declaration consisted of one count, in which two breaches were assigned: First, the breach of seizin under both deeds; and second, breach of warranty and quiet enjoyment. Suit was begun January 5, 1900.

The declaration alleges that on April 26, 1876, appellees made and delivered to appellant a deed of general warranty, purporting to convey the east half of the south-east quarter of section 34, (eighty acres,) and the west half of the south-west quarter of section 35, (eighty-two acres,) in township 19, range 12, east of the third principal meridian, which deed was duly recorded in said Vermilion county on the 27th day of July, 1876. Appellees also made a statutory warranty deed to appellant for the east half of the south-west quarter of section 35, in the same town and range, which latter deed was filed and recorded on the 15th of March, 1880. The consideration for said land was $8100. The breach as to seizin was: "The defendants were not seized in fee simple, and did not have good right and lawful authority to sell and convey the whole of the said described real estate, in this: that on the 4th day of May, 1864, one Harvey Sandusky was then the owner in fee simple, and actually possessed with good right and lawful authority to sell and convey the whole of the lands described as aforesaid, and upon that day, for a good and valuable consideration to him paid by one John Faulds, did then sell all coal and mineral beneath the surface of said described lands (excepting the north-west quarter of said south-west quarter of section 35,) with the right to dig and re-

move the same therefrom, and for that purpose to sink pits and shafts thereon, with the right of ingress and egress over the surface to and from said pits and shafts and to flow the water over the surface from said mines; and on said date the said Harvey Sandusky, by his deed of conveyance with the usual covenants, conveyed to the said Faulds said coal and mineral, with the rights and easements aforesaid, which deed of conveyance was filed for record in the office of the said recorder of deeds on the 14th day of May, 1864, and is of record therein on page 312, volume 4, of deeds. And plaintiff avers that he entered into the actual possession of the surface of said described lands, and has so possessed the same from thence hitherto. And he further avers that said coal and mineral so conveyed to said Faulds was never actually taken possession of until the first day of May, 1897, when the Catlin Coal Company, a corporation, having become the owner in fee, by *mesne* conveyance from said Faulds, of said coal and mineral, with the rights and easements in his said deed of conveyance mentioned, entered into the actual possession of said coal and mineral by means of a tunnel and entry extending from the coal mine of said company upon adjoining lands, into a vein and stratum of coal so conveyed to Faulds, as aforesaid, which stratum of coal is one hundred and eighty feet beneath the surface of plaintiff's said described land, and plaintiff avers that said company still retains said possession and has mined and removed therefrom large quantities of coal, to-wit, 50,000 tons, to the damage of plaintiff," etc. The declaration lays damages in the sum of $16,000. The second breach, as to warranty and quiet enjoyment, was demurred to in the trial court and the demurrer sustained, and in the view we take of the case need not be set out or further considered.

To the first breach a number of pleas were filed, some of which were disposed of and about which no question is made and need not be set out or further referred to.

Among the pleas was one of the ten year statute of limitations, which is designated the first plea. The fourth plea was, that there was no vein or stratum of coal lying beneath said land, as alleged. The fifth and sixth pleas were in the nature of pleas of confession and avoidance, except as to nominal damages.

To the plea of the ten year statute of limitations appellant replied, that after the entry of the Catlin Coal Company, the plaintiff, in writing, notified the defendants of such entry and requested them to defend his title and possession thereto, and in response thereto, on May 10, 1897, it was agreed by and between defendants and plaintiff that plaintiff's name should be used as plaintiff in the action of ejectment to be brought in said court to recover the possession of said coal and mineral from said Catlin Coal Company, for the benefit of defendants and to satisfy their covenant, and in consideration thereof the defendants promised to correct the legal title to said east half of the south-west quarter of section 34 before the commencement of said action of ejectment, by procuring, at their expense, quit-claim deeds from certain of the heirs of one Josiah Sandusky, then supposed to have a legal title to the coal and minerals under the surface of said tract; that said action of ejectment was commenced June 1, 1897, and was prosecuted to final judgment, wherein it was adjudged that the said Catlin Coal Company had the paramount legal title to said coal and mineral. Plaintiff further averred that the defendants, pursuant to their said undertaking and promise, did pay and discharge the costs and expenses of said prosecution of said action of ejectment, amounting to the sum of $500, and by reason thereof, plaintiff says, defendants have acknowledged the said cause of action, and have thereby made payments on the said several covenants, and thereby have removed the bar of the Statute of Limitations. A demurrer was interposed and sustained to this replication, and plaintiff excepted and abided by his replica-

tion.   To the fourth plea, that there was no coal under the lands in question, a demurrer was interposed and the demurrer overruled, and plaintiff excepted and abided the demurrer.

The fifth plea alleges, that before and at the time of the execution of said deeds defendants informed plaintiff that they did not own the coal and minerals underlying said lands; that the same had been severed by said conveyance of Sandusky to Faulds, in 1864, and were then owned by persons claiming under said Faulds, and with said knowledge plaintiff accepted said deeds and purchased from the defendants the surface of the one hundred and sixty-two acres in the first deed mentioned, for the sum of $50 an acre, and the eighty acres named in the second deed, at $32.50 an acre, and that no part of said price was paid for the coal and minerals underlying said lands, but was paid for the surface only, and that the said plaintiff took and agreed to take, and accepted, said deeds subject to such prior conveyance of coal and mineral, and therefore plaintiff is not damaged, except nominal damages, and defendants have not broken said covenant of seizin.

The sixth plea avers, that at and before the execution of said deeds plaintiff was informed by defendants that they derived title to said lands by a deed from one English, the assignee of said Sandusky, who was adjudged a bankrupt January 30, 1872, who had in May, 1864, severed said coal and minerals from the surface by a deed of conveyance thereof to said Faulds, and that the same were then owned by one Bernice Morrison Fuller, and also that said Sandusky and wife were then living, and the wife then had her inchoate right of dower in and to said surface; that plaintiff, for the consideration named in said deeds, purchased said surface only, subject to said prior conveyance to Faulds, with the agreement that defendants should execute to him warranty deeds to protect plaintiff against the dower interest of said wife of

Sandusky; that under said agreements defendants aver that they accepted said consideration in the said deeds named, and that by mistake the reservation or exception of such prior conveyance of said coal and minerals was omitted from said deeds; that no part of said consideration was paid by plaintiff, or intended to be paid by him, for said coal and minerals, or any part thereof; that the plaintiff remains in the quiet and peaceable possession of said surface, and the title thereto has not failed; that Sandusky died, his said widow survived, and defendants, by an outlay of $1500, procured her release of right of dower in and to said described lands, wherefore defendants say that they have not broken their covenant of seizin and that plaintiff hath not been damaged, except nominal damages.

To these pleas plaintiff demurred and the demurrers were overruled. To the action of the court in overruling plaintiff's demurrers to the fifth and sixth pleas no exception was taken or preserved in the record. On this point the record states: "And now said plaintiff files a demurrer to the fifth and sixth pleas, as amended, which demurrer to said fifth and sixth pleas is overruled by the court." By this state of the pleadings the record stood with the appellant abiding his replication to the plea of the Statute of Limitations, abiding his demurrer to the fourth plea, and with demurrers to the fifth and sixth pleas overruled without exception. The court thereupon entered judgment in favor of appellant for one dollar and costs of suit, and ordered execution. Appellant excepted and prayed an appeal, which was granted and taken to the Appellate Court for the Third District, where the judgment of the circuit court was affirmed. From that judgment of affirmance this appeal is prosecuted.

In the main briefs of appellant and appellees numerous questions are discussed and errors insisted upon, but in appellant's reply brief he says: "The Appellate Court saw fit to consider but one issue, as in its view it

disposed of the contention of the parties, and that was, whether or not the allegations in the fifth and sixth pleas, that the parties to the two deeds of land in question intended to reserve from their operation the coal and mineral beneath the surface of the land but by mistake and inadvertence omitted it from the deeds, constituted a sufficient answer and defense to the causes of action set forth in the declaration. By our demurrer to these pleas we admit the facts only that are well pleaded therein, and deny their sufficiency. The other issues in the case are upon our demurrer to the defendants' fourth plea, which denies that there is any vein of coal underlying the land. The trial court held this plea sufficient and overruled our demurrer, and we stood by it and assigned error upon the ruling in the Appellate Court, which it did not consider, and its failure to do so we assign as error in this court; also our replication to the second plea of the ten year statute of limitations was held by the trial court to be insufficient under appellees' demurrer thereto, and we stood by our replication, and in the Appellate Court assigned error upon this action of the trial court, which it declined to consider, and this omission of that court we here assign as error. These are the only questions that arise upon the record in this court. All others have been disposed of in the trial court, and have not been by either party brought into this court."

Appellees contend that the ruling of the court upon the demurrers to the fifth and sixth pleas is not open to review by us, because of the failure of appellant to except thereto and have it noted of record. In this contention appellees are in error. All the questions arising here are upon the record proper, and as they relate to rulings with respect to pleadings, which are a part of the record and which alleged errors are of law, when such is the case an appellate tribunal may review and pass upon the errors thus appearing, without a bill of

exceptions or without exceptions appearing in the record. The office of a bill of exceptions is to introduce matter into the record, but where the record shows, upon its face, all the rulings and decisions, a bill of exceptions is unnecessary. *Randolph* v. *Emerick,* 13 Ill. 344.

In the view we take of this case it will not be necessary to consider or discuss anything other than the fifth and sixth pleas, and the demurrers to the same. These pleas, in effect, state that before the purchase of appellant, Harvey Sandusky, the original owner, had in law and in fact divided these same lands into two distinct estates by having, in 1864, conveyed to Faulds the coal and mineral rights under the lands, and had thereby severed such coal and mineral strata as were there from the main body of the land; that when appellant was negotiating for the purchase of the lands he was apprised of this severance and of the existence of the two estates, and that with such knowledge he purchased only the upper estate, and that the purchase price for the lands so conveyed to him was fixed with that fact in view, and that for the land in one of said deeds he gave $50 per acre and for the other $32.50 per acre, and that as a fact he gave nothing for the coal and mineral rights, which had been previously conveyed. It is also stated in the sixth plea that it was agreed and understood that the reservation and exception of said coal and minerals from the covenants of said deed should be made, but that such was omitted therefrom by mistake. It is further averred in both of the pleas that appellant took possession of the surface of the land, being all that he bought under his deeds, at the time of the purchase, and has ever since remained and still is in possession of the same, and each plea concludes with the averment that he has only suffered nominal damages. Appellant contends that these pleas were insufficient, and that his demurrers to them should have been sustained for the reason that by the matters set up in them it is attempted to vary the terms

of the deeds by parol evidence, and that under the law that cannot be done. If such is the effect of the pleas, then we would say that appellant's contention is sound, as the rule, coming down from the horn-books and the earliest Reports of which we have any account, is expressly declared that the terms of a deed or other written instrument cannot be varied by parol evidence of any antecedent or concurrent verbal agreement. In other words, the rule is that the law presumes that the parties, having made a written agreement, included in it all that they had in their minds pertaining to it, and that it must stand as the final and solemn declaration of the transaction which it evidenced. Many cases are cited and a number of references are made to text books laying down this principle, but we deem the question so long established and so well settled that it is not necessary to here refer to them. Appellees, on the contrary, contend that the pleas do not purport or offer to change the terms of the contract, as that expression is commonly understood, but that, inasmuch as this is an action for damages, the matters set up in the pleas go to the question of consideration, which is the foundation for damages, other than nominal damages, in this class of cases.

The rule, as established in most of the States of this Republic, and, in fact, of most civilized countries, is, that the measure of damages for a breach of such a covenant is what the party actually lost by such breach, and if the title has wholly failed, then the whole of the purchase price, with interest, is the measure of damages, and if the title has partially failed and the consideration was paid as a whole, then the measure of damages is the proportion in value that the land to which title failed bore to the whole land; or if the consideration was severable as to the various tracts, and the title failed as to one of these tracts, then the measure of damages was the price paid for the particular tract, with interest. 8 Am. & Eng. Ency. of Law, (2d ed.) 183, 184; *King* v. *Gil-*

*son*, 32 Ill. 348; *Weber* v. *Anderson*, 73 id. 439; *Frazer* v. *Peoria County*, 74 id. 282; *Tone* v. *Wilson*, 81 id. 529.

The authorities usually agree, and in this State the rule is established, that in estimating the extent of the damages where there is a partial failure, the value of the property at the time of the conveyance shall form the basis. (*Weber* v. *Anderson, supra; Tone* v. *Wilson, supra.*) From an early day it became the established rule in this State that the consideration expressed in the deed, and the acknowledgment of the receipt thereof, were not binding or conclusive upon the parties, but might be explained or contradicted by parol evidence or other evidence *aliunde* the deed. So we have held it may be shown in an action between the parties upon the covenants of a deed that the consideration expressed in the deed was more than the consideration that was actually paid. (*Howell* v. *Moores*, 127 Ill. 67.) In that case a deed was made reciting the consideration as $2000, and a bond in the sum of $2000 was also given to keep the covenant against encumbrances, and the covenant of the deed was broken and the property lost, and an action was brought, when it was held competent to show that the real consideration paid was $1000 paid by note, and certain real estate, and that the real value of the real estate that was taken as a part of the consideration was only $500, and the recovery was limited to $1500. In *Ludeke* v. *Sutherland*, 87 Ill. 481, a tract of land was sold and described as one hundred and forty acres, and the consideration expressed in the deed was $3780. The price of the land was $27 per acre. There was paid in cash $500, and a note and trust deed were given for the balance of the purchase money. It was verbally agreed at the time of the sale that the actual number of acres of land was not known to the parties, and that it should be surveyed, and if there were less than one hundred and forty acres the grantor should pay for the deficit, and if more than one hundred and forty acres the grantee should pay for the excess. It

was measured and found to contain 148.74 acres, and a suit was brought by the grantor against the grantee for the excess. In *Koch* v. *Roth*, 150 Ill. 212, we held it competent to show that the consideration mentioned in the deed had not in fact been paid and that a vendor's lien might be enforced. In *Kimball* v. *Walker*, 30 Ill. 482, both a deed and a written contract acknowledging the payment of the consideration were made, and we held it competent to show that the consideration was not, in fact, paid. We have also held that a deed in the ordinary form may be shown by parol evidence to have been given as security for a loan of money and was to operate as a mortgage, thus reading into the deed a condition of defeasance upon the re-payment of the money. (*Crane* v. *Chandler*, 190 Ill. 584.) In *Drury* v. *Holden*, 121 Ill. 130, a deed was made subject to certain mortgages or trust deeds, and the consideration expressed in the deed was $40,000. The grantee purchased one of the outstanding encumbrances and the other was foreclosed by sale by the trustee, under the powers given in the trust deed, the grantee, Drury, purchasing at the sale. In this trust deed that was foreclosed was a certain lot that was not included in the deed to Drury. Holden brought a bill to set aside the sale of his lot that was not included in the deed but was in the trust deed. We held it competent to show by parol evidence that Drury assumed the payment of these outstanding encumbrances as a part of the purchase price of the lands conveyed to him, and that the amount of the encumbrances was deducted from the purchase price mentioned in the deed. Whenever the question has come before this court it has been uniformly held that the statement of the amount of the consideration and acknowledgment of its receipt in the deed were formal recitals, their only operation, in law, being to prevent a resulting trust, and that they might be explained, varied and contradicted by parol evidence.

It then remains for us to consider the question whether the facts tendered by the pleas and admitted by the demurrer go to the consideration of the deeds in the case at bar, or whether they go beyond that, and are to affect the terms of the deed in other respects. It must be borne in mind that this was not a real action, and was not to try the title, or, as we conceive, to in any way affect the title. It is a personal action for damages. True, it grows out of a land transaction, and to determine the rights of the parties the deed must be looked to. If the rule of damages is that the plaintiff can only recover what he lost, and if it is also the rule that what he lost is determined by what he paid for the land for which the breach is alleged, then it would seem to necessarily follow that, in order to determine what the extent of his loss was, it was both necessary and proper to determine what he paid for the land, or interest in the land, lost. Relating to this particular land and to the conveyances of the coal by Harvey Sandusky to Faulds and his grantees, the question was twice before this court in *Catlin Coal Co. v. Lloyd,* 176 Ill. 275, and 180 id. 398. In those cases we held that by the deed of Harvey Sandusky to Faulds the land was divided into two distinct estates, the surface and the coal, and that the latter, when thus severed, constitutes land; and we further held that said deed was a severance, and that the possession of the surface of the land, after such severance, was not the possession of the coal and minerals in place under such surface. Thus, by the declaration of this court, at the time appellant purchased there were two distinct tracts of land. One, we may say, was lying over the other. Each, in a general way, answered the same legal description, and yet each was so severed from the other that it constituted a distinct and separate body of land.

By their pleas appellees say that at the time of the purchase there was such a severance, and that appellant had notice of it, and that his contract was only with ref-

erence to one of said estates or bodies of land, and that, in fact, he only paid for one of these bodies of land,— that is, the surface.   One of the pleas further says that the failure to place the reservation or exception in the deed relative to the coal was by mistake or oversight, but we do not think that can avail appellees in an action at law, but is the peculiar subject of equity jurisdiction. In the view we take of that averment in the plea it may be regarded as surplusage, and so far as our consideration of the case goes, it will be solely upon the question of whether the pleas tendered a sufficient defense to the action, as it relates to the consideration and damages. Mr. Rawle, in his work on Covenants for Title, in the discussion of this subject says (4th ed. 258):  "On this side of the Atlantic it may be considered as settled that although (apart from the question of fraud) evidence to contradict or vary the consideration clause is inadmissible if offered to defeat the conveyance, as such, (as, for example, by showing it void because of want of consideration,) yet that for any purpose short of affecting the title this clause is not conclusive, but only *prima facie* evidence of the amount therein named.   Hence it is held that in an action on the covenant for seizin, parol evidence is admissible on the part of the plaintiff to show the actual consideration to have been greater than that expressed in the deed, for the purpose of increasing the damages, and, on the other hand, equally admissible on the part of the defendant to show the consideration less, for the purpose of diminishing them.   So it has been held admissible for the defendant to show, in reduction of damages, that the part to which there was no title was included in the deed by mistake and that no consideration was paid for it, though it is clear that such evidence is admissible solely in mitigation of damages, and not for the purpose of negativing a breach of the covenant."

In 1840 a case somewhat analogous to the case at bar, and involving the same principle as to the admission

of parol evidence, was considered by this court, wherein Kinzie had conveyed to Penrose, by a deed of general warranty, lots 10 and 11, in block 12, Kinzie's addition to Chicago, for the expressed consideration of $42. At the time there was a verbal agreement that Penrose should buy lot 10 and pay $42 for it, and that Kinzie would also convey to him lot 11 upon the condition that he should erect and finish a good dwelling upon said lot 11 within a stated time. There was no provision of this sort in the deed. The time having elapsed and Penrose having failed to build the house, Kinzie brought a bill to set aside the deed. A demurrer was sustained to the bill below and this court reversed it, saying: "The complainant anticipated an increase to the value of the residue of his property adjacent to the lot conveyed, by the agreement to build, and supposed it would have been observed by the defendant in good faith. The court see no just reason why the latter should be absolved from his engagement and also retain the lot without giving any compensation therefor. The admission of the parol evidence shows only that there was an additional consideration for the conveyance, which existed at the time and must naturally be supposed to enter into the inducements for the sale of the ground. Hence we are not satisfied that the parol proof should be excluded, but believe it ought to be admitted." (*Kinzie* v. *Penrose*, 2 Scam. 515.) In the above case it will be noticed that there was no allegation in the bill that the parol contract was to be incorporated in the deed and was omitted by any mistake of the parties, nor was it a proceeding to reform the deed in any respect, but it was to recover the lot on the ground that the consideration had failed.

In *Sidders* v. *Riley*, 22 Ill. 110, assumpsit was brought upon a note given by Riley's intestate, Hume, to Sidders, for the purchase of land. Pleas were filed and issue joined, and on the trial the plaintiff offered to prove that at the time he made the deed to Hume he had no title to

the north half of the quarter section, and that the note sued on was given for the south half and certain farm stock and other chattels. On objection of defendant this evidence was excluded. On appeal this court reversed the judgment of the trial court, and held that the evidence should have been admitted, and among other things said (p. 111): "It has been decided by this court that it is competent for a party to show a different consideration from the one stated in the deed, as between the parties to it, under peculiar circumstances. (*Kinzie* v. *Penrose*, 2 Scam. 515.) In that case the party was permitted to show that the consideration expressed in a deed for two lots of ground was in reality the consideration for one, only. So it is universally held that a deed absolute on its face may be shown by parol to have been intended as a mortgage. All that the plaintiff proposed to prove was, that when the defendant received the deed it was with the express knowledge and understanding that the consideration of $1500 expressed in it applied only to the south half of the quarter section, the defendant well knowing at the time that the plaintiff had no title to the north half and did not pretend to sell and convey any title to that half. The defendant accepted the deed with that understanding, and it is competent for the plaintiff to show this by parol."

While it is true that there is a diversity of opinion among the courts of the various States upon this question and as to whether this evidence should be held to apply to the consideration only or goes to the terms of the deed, yet after having examined with much care a large number of cases cited in the briefs of the respective parties, and many other cases and authorities besides, we are satisfied that the greater weight of authority is that such evidence only goes to the consideration, and is admissible. At all events, and whatever might be our view if the question were an original one, we think the cases cited above from this court establish the rule in

favor of these pleas, and that rule is of such long stand-ing that we would not feel at liberty to disturb it.

Our view being in harmony with the judgments of the circuit and Appellate Courts, the judgment of the Appel-late Court is affirmed.                *Judgment affirmed.*

HAND, C. J., and WILKIN and CARTWRIGHT, JJ., dis-senting.