**CHICAGO, WILMINGTON & FRANKLIN COAL CO. et al. v. HERR et al.**

No. 153–D.

District Court, E. D. Illinois.

Aug. 6, 1941.

Adams, Hawxhurst, Hawley & White, of Chicago, Ill., and Carter Harrison, of Benton, Ill., for plaintiff Coal Co.

J. G. Van Keuren, of DuQuoin, Ill., and Feirich & Feirich, of Carbondale, Ill., for plaintiff Adkins.

Hugh V. Murray, Jr., of Centralia, Ill., for defendants.

LINDLEY, District Judge.

Chicago, Wilmington & Franklin Coal Company, claiming to be the owner of the oil and gas underneath the premises involved, and Adkins, its lessee for the purpose of producing oil and gas, sue to enjoin defendants from interfering with their possession and development. Defendants deny that plaintiffs are entitled to any relief and in a counterclaim seek to quiet their alleged title to the oil and gas.

One John H. Hill, the owner of the premises, on June 30, 1905, with his wife, executed a warranty deed to Walter W. Williams, trustee, whereby the grantors conveyed and warranted (1) "all the coal, oil and gas in and under" the premises; (2) "the right to mine and remove said coal, oil and gas"; (3) without "any liability for damages from subsidence or otherwise to the owner of the superincumbent soil"; (4) the "right to make underground passages through, to and from other mines and lands adjacent thereto"; (5) "the right to the perpetual use of the same for mining purposes"; (6) the "right to take and use so much of the surface of said lands as the grantee" might deem necessary or convenient "for the * * * construction of all buildings, roadways, railways, switches, shafts, reservoirs, ditches, drains or appurtenances to mining coal, oil and gas that may be necessary to * * * construct for the mining, preparing, forwarding and marketing said coal, oil and gas" provided, however, that "all the land, the surface of which is so taken, shall be paid for when so taken at the rate of $50 per acre." This deed, duly recorded, was followed shortly by a quitclaim deed to the same grantee containing the same grants and provisions. Williams, a practicing attorney, thereafter conveyed what he had procured by virtue of the deeds to plaintiff coal company. The latter, on September 6, 1940, executed and delivered to Adkins an oil and gas lease and he has drilled on the premises and brought in a productive well. He has complied in every respect with the provisions of his lease.

The original grantor, Hill, died January 7, 1918, and, by virtue of his will and subsequent conveyances, his interests passed eventually on July 6, 1937, to Cora Doty. In her chain of title, each of the transfers is made subject to prior conveyance of the coal, oil and gas. The language in the various deeds read thus: "subject * * *

to a prior conveyance of the coal, oil and gas"; "subject to warranty deed * * * conveying the coal, oil and gas underlying said land together with certain rights and privileges for mining and removing the same," and "subject, however, to a prior conveyance of the coal, oil and gas as shown of record." In this series of transfers no conveyance or devise omitted a clause subjecting the grant to the prior conveyance of coal, oil and gas. But on April 17, 1941, Mrs. Doty and her husband made a quitclaim deed to defendants William Troy Doty, Rome Sanders and T. R. Young, making no reference to or exception of coal, oil and gas. Mrs. Doty's grantees immediately executed an oil and gas lease to defendants Herr and Seiglar. Six days later, on April 23, 1941, plaintiffs filed this suit to enjoin defendants from interfering with plaintiffs' development and to cancel the lease to Herr and Seiglar and its subsequent assignment to the Sihon Company.

Defendants and their predecessors have had uninterrupted possession of the surface of the premises and farmed the same continuously. The coal company and its predecessors have paid the taxes on the minerals underlying said premises for all the years from 1919 to 1939, both inclusive.

Upon these facts, plaintiffs claim to own the oil and gas and the right to remove the same while defendants claim that the deed to Williams conveyed no interest in the oil and gas; that they have retained and are now seized of all the same and that title thereto is vested in them by virtue of adverse possession.

 In Illinois, oil and gas are treated as minerals having certain peculiar attributes not common to those which have a fixed, permanent situs. Because of their character and the possibility of their escape, they are held not capable of distinct ownership in place. Unlike solid minerals, they can not be the subject of ownership distinct from the soil before taken from the ground. Thus a grant of the oil and gas is "a grant, not of the oil that is in the ground, but to such part thereof as the grantee may find * * * [and] The right to go upon the land and occupy it for the purpose of prospecting [and removing oil], if of unlimited duration, is a freehold interest." Title to oil and gas as such vests in the grantee only when he takes it from the land. Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 54, 122 Am.St.Rep. 144; Conover v. Parker, 305 Ill. 292, 137 N.E. 204; Triger v. Carter Oil Company, 372 Ill. 182, 23 N.E.2d 55. But the unlimited right to occupy the premises for the purpose of producing oil and gas confers upon the grantee a present vested right, Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am. St.Rep. 332; the right to operate on the premises, to enter at all times for the purpose of drilling, operating, and erecting and maintaining all necessary structures. Such an estate is a freehold and also, if occupied as a homestead, constitutes a homestead estate under the Illinois statutes. Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46. A deed for oil and gas is in legal effect a sale of a portion of the land. Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108; Triger v. Carter Oil Co., 372 Ill. 182, 23 N.E.2d 55. The conveyance, however, of the right to enter upon the land for the purpose of prospecting and operating for oil and gas, laying pipe lines, and building powers, stations, and structures to produce, save, and care for the products is a conveyance of an interest in the land itself, which, if of indefinite duration, is a freehold estate in the land. Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507. Summers in his work on Oil and Gas, Permanent Edition, Vol. 1, page 351, § 136, analyzes the decisions in these words: "It is believed that in most of these instances the courts meant about the same thing; that is, that the landowner, although his legal relations in respect to oil and gas are not such that he may be said to own the oil and gas that is actually under his land, nevertheless has the privilege of taking them and the right that others shall not take them, and that these relations create in him a property interest; that this property interest can be transferred to another in fee or for life."

 So Hill's deed to Williams conveyed coal, oil and gas and the right to mine and remove them, free and clear of any liability for damages to the owner of the surface. It matters little whether we consider the deed as one conveying expressly the right to utilize the surface in exploring for and producing oil and gas or whether we look upon it as a grant of such right by implication. If for any reason the express grant is insufficient in law to convey all things necessary to its full en-

joyment, the law implies a grant of all such necessary elements. When a deed conveys coal, oil and gas with the right to mine and remove them, all the means to attain the purpose of the conveyance to secure realization of its fruits are granted also. They pass with "the grant of the thing itself, without any words to that effect. * * * Where a grant is made for a valuable consideration it is presumed that the grantor intended to convey and the grantee expected to receive the full benefit of it, and therefore the grantor not only conveyed the thing specifically described, but all other things, so far as it was within his power to pass them, which were necessary to the enjoyment of the thing granted. The deed, when made, would not only pass the coal, oil, and gas, with the right to mine and remove the same, but also the right to enter upon and use so much of the surface of the land as might be necessary to the enjoyment of the property and rights conveyed." Threlkeld v. Inglett, 289 Ill. 90, at 97, 124 N.E. 368, at 371. To the same effect is Lovelace v. Southwestern Petroleum Co., 6 Cir., 267 F. 513 and cases cited in 40 C.J. 984, Section 571.

That this interpretation by the Supreme Court of Illinois is in accord with the state's public policy as expressed by the legislature is apparent from Ill.Rev. Stat.1939, Chap. 94, Sections 6 and 7, which provide that any mining right or the right to explore for any minerals may be conveyed by deed or lease with like effect as deeds and leases of real estate and that when the owner may convey any mining right such conveyance shall be considered as so separating such right from the land that the same shall be taxable separately and no sale of the land for any tax or assessment shall include or affect such mining right.

Thus the right to explore for oil and gas and remove the same was a grant in fee simple. It was a property right, vested, under the decisions quoted, in the grantee. Neither the surface owner nor his subsequent grantees could repudiate the same or interfere with the grantee's enjoyment of the rights conveyed.

But defendants insist that the provision that when any part of the surface is taken it shall be paid for at $50 per acre limited plaintiff to a mere option which, because of lack of a fixed time within which it must be exercised, is void under the rule against perpetuities. They rely upon Illinois decisions that options of unlimited duration are void. But this court is endowed with no discretion in the premises; to it is left no room for speculation as to what should be the law, and it is under no duty to consider the rule in other jurisdictions, for the Supreme Court of Illinois has spoken clearly upon the subject in Threlkeld v. Inglett, supra. There plaintiff procured from an owner a valid option to buy the coal, oil and gas under certain premises. Upon defendants' refusal to convey, plaintiff sued for specific performance. The contract provided that the deed to be executed should grant the right to take such portion of the land as was necessary to remove the coal, oil and gas but that the surface so selected should be paid for at the rate of $150 per acre. Defendants contended that, because of this provision, the deed would be subject to the rule against perpetuities, because it would give plaintiff the right to purchase so much of the surface as it might require, at any time. The court said:

"It is true that an agreement to sell real estate at any time in the future when a party may choose to buy it is void for remoteness under the rule against perpetuities, but this contract was not of that nature. The conveyance was to be of the coal, oil, and gas under the land, with the right to mine and remove the same, and when anything is granted, all the means to attain it and all the fruits and effects of it are granted also, and pass, together with the grant of the thing itself, without any words to that effect. * * * The deed, when made, would not only pass the coal, oil, and gas, with the right to mine and remove the same, but also the right to enter upon and use so much of the surface of the land as might be necessary to the enjoyment of the property and rights conveyed, and the agreement was merely that the land taken for such use should be paid for, when located, at the rate of $150 an acre. It was not within the rule against perpetuities."

Defendants cite Bauer v. Lumaghi Coal Co., 209 Ill. 316, 70 N.E. 634, to the effect that the obligation to pay $50 an acre for surface right avoids the agreement under the rule of perpetuities, but the court in that case said nothing about the rule. It held that the contract there involved was void for want of mutuality and that plaintiff was barred by its own

laches. What the court would have held, had the applicability of the rule against perpetuities been suggested, is left entirely to one's imagination. I can only conclude that the Supreme Court, had the point been raised, would have decided as it did in Threlkeld v. Inglett, supra, a later decision.

Defendants cite certain cases from other jurisdictions, but in view of the language of the Supreme Court of Illinois, no purpose lies in consideration of those decisions. Nor do I find that the Supreme Court of Illinois has cited any of the cases relied upon by defendants with approval but rather, upon analysis of the court's opinions, it is apparent that it distinguishes between such decisions and its own.

■ The provision considered in Threlkeld v. Inglett, supra, was in no wise different from the provision here and the decision of the court that the contract was not void because of the rule against perpetuities is controlling upon this court.

■ Defendants insist also that because of twenty years' possession of the surface, under claim of ownership, they have, by virtue of Illinois Rev.Statutes, Chap. 83, § 1, title by adverse possession. Such title can arise only out of possession under claim of ownership in fee simple. Here the title of all defendants' predecessors was expressly subject to the grant of the coal, oil and gas. Consequently there was apparently no claim of title by any of them subsequent to the grant to Williams until the Doty grant in April, 1941, but rather express recognition of title to the minerals in others.

Moreover, possession of the surface for the purpose of farming is in no wise inconsistent with or adverse to title to the minerals in another. After the conveyance to Williams, title to the surface and title to the coal, oil and gas and right to remove the same were severed and possession of the surface could not be possession of the other estate. Thus in Renfro v. Hanon, 297 Ill. 353, 130 N.E. 740, 741, the court said:

"The possession of the surface does not carry with it the possession of minerals in place under the surface. By a severance separate estates are created, which are held by separate and distinct titles, and each estate is incapable of possession by the mere occupancy of the other; and this is so even if the instrument constituting color of title purports to convey the whole property, as the will of Palmer did. Catlin Coal Co. v. Lloyd, 176 Ill. 275, 52 N.E. 144; Catlin Coal Co. v. Lloyd, 180 Ill. 398, 54 N.E. 214, 72 Am.St.Rep. 216; Lloyd v. Sandusky, 203 Ill. 621, 68 N.E. 154."

Here the owner had possession only of the surface and plaintiffs had for more than twenty-one years paid the taxes assessed against the minerals as a separate estate. There is no showing here of such adverse possession as would under the Statutes of Illinois create title in defendants. Superior Oil Co. v. Harsh, D.C., 39 F.Supp. 467; Summers Oil and Gas, Permanent Edition, Vol. 1, p. 355, § 138.

Defendants refer to the fact that in Kinder v. LaSalle County Coal Co., 310 Ill. 126, 141 N.E. 537 the Supreme Court held that the term "other minerals" did not include limestone. Such was the holding, but the court was impelled to that conclusion by the particular facts involved. The court pointed out that both parties knew there was limestone on the premises near the surface and that for many years the grantors had continued to quarry and sell limestone without objection and concluded that, as there had been actual adverse possession of the limestone for more than twenty years without objection upon the part of the owner of the mineral rights, the statute was directly applicable. The court under these facts found that the intention of the parties was that limestone should not be conveyed.

■ No plea to the court that the situation is not an equitable one and that the parties intended to convey only coal can, in the face of the conveyance and the facts presented, avail defendants anything. Too often in the disposition of cases, the chancellor is confronted with the claim that to enforce the contract of the parties will produce an unfair result. But the court can not falter in its obligation to enforce contracts of parties entered into for valid consideration openly and without fraud, duress or mistake. It must impose upon parties competent to act full responsibility for their actions.

Accordingly judgment will enter for plaintiff and against defendants as prayed, dismissing defendants' counterclaim for want of equity.

The findings and conclusions herein contained are adopted as the findings of fact and conclusions of law in the case.