## CHICAGO, WILMINGTON & FRANKLIN COAL CO. et al. v. JILEK et al.

### SAME v. HOWELL et al.
Civil Actions Nos. 163–D and 164–D.

District Court, E. D. Illinois.

Jan. 3, 1942.

Essington, Beebe & Pratt, of Chicago, Ill., Carter Harrison and Roy C. Martin, both of Benton, Ill., C. E. Feirich, of Carbondale, Ill., and J. G. VanKeuren and Calvin A. Brown, both of Du Quoin, Ill., for plaintiffs.

C. M. Raemer, of Salem, Ill., for intervenor Robert Q. Simpson.

John L. Gleason, of Benton, Ill., for defendant Wm. P. Ford.

Harrison, Murray & Miller, of Benton, Ill., for defendant John Jilek and others.

Moses Pulverman, of Benton, Ill., for defendants C. H. Chenault and others.

LINDLEY, District Judge.

The real estate involved in 164–D is the west one-half of the northwest quarter of the southeast quarter of section 25, Town. 6, Range 2 East of the 3rd P.M., in Franklin County, Illinois. The common source of title of all the parties is Robert Q. Simpson and Ella Simpson, his wife. The land involved in 163–D is the northeast quarter of the same quarter section and the common source of title is Elizabeth Simpson and Isaac Simpson, her husband. The two latter, parents of Robert Q. Simpson, have been dead for many years. The sharply contested issue in 164–D is as to the propriety of reformation of a deed, executed July 6, 1905, by Robert Q. Simpson of land involving the twenty acre tract and in 163–D of a deed executed the same day by Elizabeth Simpson and her husband, involving the forty acre tract.

Each conveyance, from which plaintiffs' titles emanates, conveyed "all the coal, oil, gas and other minerals in or underlying" the respective properties, "absolutely and specifically granting the right to mine and remove all the coal and other minerals underlying said land." Each, as pointed out in Chicago, W. & F. Coal Co. et al. v. Herr et al., D.C., 40 F.Supp. 311, created a then vested right in the grantee to the oil and gas underlying the premises together with the right to mine and remove the same—an exclusive right of unlimited duration amounting to a fee simple estate and freehold in the land. Shell Oil Co. v.

Manley Oil Corporation, 7 Cir., 124 F.2d 714; Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46; Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 122 Am.St.Rep. 144; Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507; Triger v. Carter Oil Co., 372 Ill. 182, 23 N.E.2d 55; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108. In addition the deeds conveyed by necessary implication the right to enter upon the surface for the purpose of removing the oil and gas. Shell Oil Co. v. Manley Oil Corp., supra; Threl-keld v. Inglett, 289 Ill. 90, 124 N.E. 368; Chicago, W. & F. Coal Co. v. Herr, supra.

It is sought, however, to avoid the deeds and to reform them by eliminating from the granting clause of each everything except the coal under the land. To justify this relief, the intervenor Robert Q. Simpson and the cross-claimant Ford, lessee of Simpson, offer the testimony of certain witnesses, chief of which is Robert Q. Simpson, himself. He testified that each of the deeds was executed to take up and in compliance with an option given to the grantee prior to execution of the deeds. These purported options covered only the coal. Simpson testified that, at the time Chenault, the grantee, presented the deeds for execution, both he and his father protested against inclusion of oil and gas and executed and delivered each deed only upon the promise of the grantee that he would, when he reached his office, delete from the description in the instruments everything except the coal underlying the land. The transaction occurred in 1905 and complaint was first made as to the alleged fraud in the spring of 1941, some thirty-six years later.

The evidence shows beyond peradventure that the options produced were forgeries; that the typewriting was done upon machines which were not in existence in 1905; that the man who filled in the blanks in the options, who placed thereon the signatures of the optionor, the optionee and the attesting witness was none other than Simpson himself. In his overpowering avaricious desire to participate in the oil discovered some thirty-six years after the delivery of the deeds, he was willing to stoop to the degrading conduct of manufacturing evidence. Furthermore, after photostatic copies of the options had been made, he retained the latter and tampered with them in an obvious attempt to copy more exactly the handwriting of Chenault who, he falsely swore, did all of the handwriting other than signatures. Because of his deliberately false testimony, I can place in him no credibility.

He was corroborated by a witness who said that as a hired man he saw and heard what happened in 1905; yet two disinterested witnesses testified this person had been so nearly without sight that he had to be led about by a boy or his wife for at least forty years. Evidently at the time when he said he was working on the farm in 1905, he was an inmate of the County Home.

Simpson submitted, also, in an attempt to corroborate him, the testimony of his sister, who testified that she was of that class of persons who are born with "veils before their eyes" and therefore are endowed with power of mental foresight. Emanating from this power, she said, was a vision of something valuable beneath the soil, inspiring her to tell her brother thereof. The intervenor also submitted the testimony of his brother who said that on the day in question, he came in from the field at noon and remembered a part of what the intervenor swore to as to the execution of the conveyances. Upon review of all this testimony, bearing in mind that the intervenor wrote not only the names of his father, his mother, himself, the grantee and the witness upon his manufactured options, I am driven to the inescapable conclusion that the whole story as to what is alleged to have transpired on July 6, 1905 is deliberately manufactured and false. Consequently the prayers for reformation must be denied in each case.

Moreover, even had the testimony borne any sign of truth, it would have been insufficient to sustain the prayer for reformation. To justify such an action, a mere preponderance is not sufficient but the evidence must be so convincing as to leave no reasonable doubt in the mind of the court. Otherwise titles may be overturned by vague and loose testimony. The Illinois courts refuse to grant relief in the absence of strong convincing evidence, and render title to real estate unsecured. They will not thus defeat the operation of the statutes of the state requiring titles to real estate to be evidenced by certain formal writings. Tope v. Tope, 370 Ill. 187, 18 N.E.2d 229.

A further reason exists why even, if there were any truth in the testimony,

the relief could not be granted. The deeds were made in July, 1905 and recorded shortly thereafter. The titles conveyed stood unchallenged for thirty-six years. All the parties to the transaction other than Robert Q. Simpson are dead. The testimony of the alleged witness, the father, mother and the grantee can not be offered to the court. The property increased in value in 1941. Immediately the claim appeared. As a matter of public policy such laches, combined with the death of the parties and witnesses, bars relief. This results because, under such circumstances, the court is unable to render substantial justice between the parties; no element of estoppel is essential. Leuer v. Kunz, 260 Ill. 584, 103 N.E. 550; Dustin v. Brown, 297 Ill. 499, 130 N.E. 859; Vermilion County Home v. Varner, 192 Ill. 594, 61 N.E. 830; Dempster v. Rosehill Cemetery Co., 206 Ill. 261, 68 N.E. 1070; Klee v. Chicago Trust Co., 365 Ill. 354, 6 N.E.2d 442; Ferns v. Chapman, 211 Ill. 597, 71 N.E. 1106; Thomas v. Van Neter, 164 Ill. 304, 45 N.E. 405. The doctrine is frequently applied where the property has increased in value and where parties to the transaction and witnesses are dead. Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719; Abraham v. Ordway, 158 U.S. 416, 15 S.Ct. 894, 39 L.Ed. 1036; Underwood v. Dugan, 139 U.S. 380, 11 S.Ct. 618, 35 L.Ed. 197. It has been held peculiarly applicable to oil litigation because of the fluctuating character of the subject matter and the great changes in value which frequently occur in a short space of time. Carlock v. Carlock, 249 Ill. 330, 94 N.E. 507; Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Hayward v. Eliot National Bank, 96 U.S. 611, 24 L.Ed. 855; Taylor v. Salt Creek Oil Co., 8 Cir., 285 F. 532; Medallion Oil Co. v. Hinckley, 9 Cir., 92 F.2d 155; Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214.

■ In all such cases it is the duty of the parties complaining to inform themselves and to act; mere proof that they were ignorant of the facts does not wipe out the vice of resulting unsettled overturned titles. Public order and tranquility demand that they acquaint themselves with their rights and act. Failing to do so, they are barred. Wetzel v. Minnesota Railway Transfer Co., 169 U.S. 237, 18 S.Ct. 307, 42 L.Ed. 730; Johnston v. Standard Min. Co., 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480.

■ Other questions presented in these two cases, I think, are fully answered by my decisions in Chicago, W. & F. Coal Co. v. Herr, supra, and Chicago, W. & F. Coal Co. v. Minier, 40 F.Supp. 316 and Shell Oil Co. v. Manley Oil Corp., supra. Thus, Jilek, who has been in possession of the surface, has acquired no rights as against the owner of the minerals. The two estates were severed many years past. Taxes for many years on the respective estates have been paid by the respective owners. As said in Chicago, W. & F. Coal Co. v. Herr, supra, such possession of the surface can in no wise create an adverse title against the owners of the minerals.

■ But it is said by Ford, who took a lease from the surface owner, that failure to develop the oil and gas over thirty-five years has worked an abandonment on the part of plaintiffs. Such an argument loses sight of the nature of the title. The conveyance of coal, oil and minerals under Illinois statutes, as we have seen, is a fee simple title to the coal in place and a fee simple title in the right to mine, produce and remove the oil. Such titles are not to be barred except in the manner provided by statute for the creation of title by adverse possession. No element of effective adverse possession is present. Though the owners of the mineral rights only lately began to attempt to remove the oil and gas, in the meantime there has been no possession adversely to their title. I know of no way of creating a title to real estate against an owner of record except by virtue of the statutes of limitation of the state.

■ In this connection, I refer again to what I said concerning the Illinois decisions in Chicago, W. & F. Coal Co. v. Herr, D.C., 40 F.Supp. 311 and Chicago, W. & F. Coal Co. v. Minier, D.C., 40 F.Supp. 316. It is well to observe in addition, however, that in Transcontinental Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507, Mr. Justice Dunn, after mentioning that property in a determinate object is composed of certain constituent elements, towit: the unrestricted right of use, enjoyment and disposal of that object, and that "the right to possess, use, occupy and enjoy corporeal things" and take the profits thereof is what the law regards as corporeal property, held that the right to produce oil and gas is, as the Supreme Court of Pennsylvania said in Barnsdall v. Bradford Gas Co., 225 Pa. 338, 74 A. 207, 26 L.R.A.,N.S., 614, a corporeal and not an incorporeal heredita-

ment, for the reason that it is the right to possess, use and occupy and enjoy corporeal things—oil and gas. He held that, in legal effect, a conveyance of such interest was "a sale of a part of the land" and of an estate in the land "which is corporeal property." In a more recent decision, Triger v. Carter Oil Co., 372 Ill. 182, 23 N.E.2d 55, 56, the court, in interpreting a deed conveying "an undivided one-half interest in and to all the oil and gas in and under and that may be produced from the following described lands," adhered to the definitions previously adopted. Thus the court has in effect said that while title to the oil and gas in itself does not pass at the time of the conveyance, nevertheless such deeds convey the privilege of taking oil and gas and the right that others shall not take them and create in the grantee a property interest, a corporeal property interest which may be transferred to another in fee. Summers on Oil and Gas, Perm.Ed., Vol. 1, p. 351, § 136.

It is apparent, therefore, that the interests conveyed by the deeds here involved, under the decisions of Illinois, were not the same as those before the court in Collier v. Caraway, Tex.Civ.App., 140 S. W.2d 910, 913, cited by defendant, for there the deed reserved merely "the privilege to drill an oil well," as the court said, "that and nothing more." The reservation clause contained no apt words either specifically reserving the oil and gas or from which it could be inferred that the oil and gas were subject to separate ownership. Such property interest was not essential to enjoyment of the right to drill an oil well. The further language of the court was enlightening. It said that had there been a reservation of the ownership of oil and gas or interest therein, then such title "could only be destroyed by adverse possession and limitation." It pointed out that its construction of the reservation was that it reserved no present estate or title to the minerals, and therefore was not within the statutes of limitation and adverse possession controlling corporeal prop-

erty. Here there was a conveyance of a corporeal property interest in fee and, as the Texas court said, that title can be destroyed only by adverse possession, which is non-existent in this cause. A vested legal title to a corporeal interest can not be lost by mere abandonment. Nothing short of the statute of limitations creating a title by adverse possession will bar it. Wilmore Coal Co. v. Brown, C.C., 147 F. 931; Venture Oil Co. v. Fretts, 152 Pa. 451, 25 A. 732.

I take it that essentially the decision in Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601 was that the grant was abandoned because of failure of the grantee to exercise diligence as required by the terms of his lease.

The fallacy of defendant lies in his assumption that the deeds did not under the Illinois decisions convey a property right in perpetuity. As in Scott v. Laws, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369, cited by him, we are dealing with conveyances of an exclusive right in perpetuity to use a corporeal article. The effect of the conveyances was to sever from the surface the coal in place and the perpetual right in fee simple to take, produce and enjoy the oil and gas. This was a severance of the surface from the respective estates conveyed and in such case abandonment of the mineral interest is not inferred; only adverse possession will terminate the estate. Uphoff v. Trustees of Tufts College, 351 Ill. 146, 184 N.E. 213, 93 A.L.R. 1224.

There are many other facts involved but it is not necessary to discuss them more fully than I have in my findings and conclusions entered contemporaneously with the filing of this memorandum. The findings and conclusions herein contained are likewise included in my more formal findings and conclusions in each cause by way of reference.

Judgment will enter in each case in favor of plaintiffs and against defendants in accord with the findings and conclusions and this memorandum.