(No. 14416.—Decree modified and affirmed.)
M. R. McCall et al. Defendants in Error, vs. James L. Middleton, Plaintiff in Error.

*Opinion filed October 21, 1922.*

Deeds—*when deed will be reformed to make exception as to coal rights.* Where grantors do not own the coal underlying the premises sold by them but the deed makes no exception as to the coal, and where the grantee knows at the time of the conveyance that he is not buying and paying for the coal, the deed will be reformed at the suit of the grantors on the ground of a mutual mistake, but the reformation should be by exception instead of a reservation, as the grantors cannot legally make a reservation of rights they do not own.

Writ of Error to the Circuit Court of Marion county; the Hon. Thomas M. Jett, Judge, presiding.

Elbert B. Vandervort, for plaintiff in error.

Noleman, Smith & Dallstream, for defendants in error.

Mr. Justice Duncan delivered the opinion of the court:

This writ of error is prosecuted to reverse a decree of the circuit court of Marion county granting the reformation of a deed on the ground of a mutual mistake of the parties in the execution thereof. At the April term, 1920, of the circuit court, defendants in error, M. R. McCall and Jennie McCall, his wife, filed their bill representing that on December 20, 1919, they sold and conveyed by warranty deed to plaintiff in error, James L. Middleton, a tract of land containing 107.4 acres in said county. The bill alleged that the scrivener who prepared the deed, although he understood how the deed was to be prepared, by mistake omitted the words, "saving and reserving unto the grantors the coal underlying said premises," and that these words were intended to be included in the deed both by themselves and

plaintiff in error, and that upon learning of the mistake they repeatedly requested plaintiff in error to re-convey to them the coal underlying the premises but that he refused to do so. The bill further alleges that these coal rights are·valuable, and that they will be deprived of valuable property unless the deed is reformed. The prayer of the bill is for a correction of the mistake, reformation of the deed, and such other and further relief as equity may require. Plaintiff in error answered the bill, admitting the execution of the deed but denying that any mistake had been made, and denying that it was mutually intended that the above words, "saving and reserving unto the grantors the coal underlying said premises," be included in the deed. He averred that it was expressly understood that the deed was to be without reservation, and denied that defendants in error were entitled to any equitable relief. Replication was filed to the answer, and upon a hearing before the court a decree was entered granting the relief prayed in the bill.

The facts in the record are in substance the following: The legal title to the premises in question was in M. R. McCall, trustee for the Reinhardt heirs, who were the actual owners of what is known or referred to as the surface rights but were not the owners of the coal under the land and never had been. Their father in his lifetime had donated and deeded the coal to a coal company, or to parties under an agreement that they would form a coal company and mine the coal under the land in consideration of said grant and other grants of similar character. The actual management and control of the property were in Fred F. Reinhardt for the heirs, Fred F. Reinhardt, Charles Reinhardt, Amelia Smith and Estelle Knight. The trustee placed the property in the hands of one Morris, a real estate dealer, for sale, and so far as this record shows had no further interest in the land except as trustee for the heirs. At the time of these negotiations there was a five-year farm lease on the surface rights in favor of a third

person, about three years of which had expired. Plaintiff in error agreed with Morris, the agent, to buy the surface rights for $5500, which proposition was accepted and agreed to by the trustee and the heirs. A warranty deed was prepared by Fred F. Reinhardt, one of the heirs, to plaintiff in error, to be executed by the trustee, and in that deed there was a reservation in regard to the farm lease but no reservation or exception as to the coal rights under the land. Plaintiff in error refused to accept this deed with such reservation, on the ground that it might interfere with his getting a loan on the land. Another deed was then prepared for the trustee to execute, without any reservation or exception whatever, and is the warranty deed in question executed by the trustee. When this latter deed was tendered to plaintiff in error he claims in his testimony that he asked the trustee if this was the character of deed he wanted to make him, and that he replied, in substance, that he guessed it was,—that Fred Reinhardt wrote it and he executed it. The evidence also shows, without dispute, that to guard the trustee against liability by reason of the farm lease, he and plaintiff in error entered into a written contract by which plaintiff in error agreed to accept the land subject to the farm lease and to regard the lessee as his tenant. The evidence also shows, without contradiction, that plaintiff in error knew that the coal underlying the land was owned by the coal company and that a great part of it had already been mined and taken from the land. He knew this from the fact of his services for and connection with the coal company, for which he had worked for years. In fact, he knew that the Reinhardt heirs never owned the coal under the land but that it had been deeded before they acquired the ownership of the surface rights, and no representation was made to him by the trustee or anyone that they owned the coal rights. He expressly testified that he offered to pay the consideration for the Reinhardt property, and that the coal did not enter into the agreement and that he was

not considering the coal at that time in particular. The evidence shows clearly that the land was worth, without the coal rights, the full sum of $5500 which he paid for it. The evidence further shows that all of the coal had been mined except on 39 acres, and that the coal was worth $35 per acre. The evidence shows without doubt that the deed includes the coal rights that plaintiff in error did not buy and did not intend to buy and that he knew he was not buying and paying for. In short, the evidence shows there was a mutual mistake in the deed describing the property rights that plaintiff in error bought and that defendants in error sold. There were 107.4 acres of surface rights sold to plaintiff in error by defendants in error, and that was what the deed called for, and in addition thereto it conveyed coal that was not owned by defendants in error or sold to plaintiff in error. As we view this case, the rights of the parties are in no way different, in principle, than if defendants in error had conveyed to plaintiff in error by mistake 39 acres of land they did not own and that he did not buy. It certainly would not be contended by plaintiff in error that in the latter case defendants in error would not in equity be entitled to a reformation of the deed so as to show an exception of the land conveyed or to have the false description expunged from the deed. On the other hand, if the deed had by mistake of the parties failed to include any number of acres of the tract intended to be conveyed plaintiff in error would have been entitled to a reformation of the deed so as to include all of the land that he did buy.

We think that defendants in error, under the showing in the record, were clearly entitled to have the deed reformed, not by inserting therein the words, "saving and reserving unto the grantors the coal underlying said premises," as decreed by the court, but so as to include the words, "excepting the coal underlying said premises." Defendants in error and the Reinhardt heirs did not own, and never did own, the coal underlying the land. The reformation of the

deed should therefore be by an exception instead of a reservation, as, strictly speaking, the grantors could not legally make a reservation of rights they did not own. Under the general prayer for relief defendants in error were entitled to have the deed reformed as we have indicated.

Fred Reinhardt, who wrote the deed, testified, in substance, that it was by his carelessness or oversight that the deed was so drawn as to convey the coal rights. Plaintiff in error argues that a court of equity will not reform a deed for mere carelessness of a grantor. Reinhardt was the scrivener and not the grantor. The trustee is the party bound by this deed, and the record shows that there is a suit now pending against him on his warranty, brought by plaintiff in error. It would be most inequitable to hold that the trustee is bound by the negligence or oversight of the scrivener under the other facts proved in this record. We have taken the most charitable view of the evidence so far as it affects the plaintiff in error. If the mistake is not mutual between him and the grantor, and if the real fact be, as intimated by plaintiff in error, that although he only bought the surface rights he intentionally induced the grantor or trustee to make him a deed to more than he bought and that the mistake is only that of the grantor, under such a state of facts defendants in error would have been entitled to have the contract and deed rescinded for fraud. Under no equitable view of this case could defendants in error be held on their warranty rightfully and equitably. The evidence entitles them to relief against the legal effect of the warranty deed, and we are thoroughly satisfied that they are entitled to a reformation of the deed.

The decree of the circuit court will be modified as above indicated, and is by this court so modified, and as modified the decree is affirmed.          *Decree modified and affirmed.*