(No. 14744.—Reversed and remanded.)

FRED O. NELSON, Appellee, *vs.* M. A. JOSHEL, Appellant.

*Opinion filed October 21, 1922—Rehearing denied Dec. 15, 1922.*

1. DEEDS—*effect of possession as notice to purchaser.* Possession of land is notice to all persons dealing with it of whatever rights the one in possession claims, and a purchaser takes subject to such claims provided they are well founded; but possession is notice of such facts, only, as inquiry of the occupant will disclose as to the extent and character of the occupant's claim.

2. SAME—*when bona fide purchaser will be protected in suit to set aside deed by party in possession.* In a suit to set aside a deed made by a party who is in possession of the land under a lease entered into after he had conveyed the premises, a *bona fide* purchaser will be protected even though the first deed was obtained by fraud, where the fraud was not discovered until after he had paid the consideration for his deed from an intermediate grantor and where inquiry of the party in possession would not have disclosed any fraud.

3. SAME—*effect of deed conveying leased land.* The execution of a deed to leased land operates, in law, to convey rents accruing thereafter, but does not give the grantee the right, as against the lessee, to any portion of rent paid in advance.

APPEAL from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding.

JOHN M. RAYMOND, and JOHN K. NEWHALL, for appellant.

WALTER E. HEALY, and G. R. BEVERLY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Fred O. Nelson, by his bill in equity filed in the circuit court of Kane county, alleging that he had been induced by false and fraudulent representations of the Daniel Hayes Company of Idaho to convey his farm of 150 acres in St. Charles township, in Kane county, to Louis L. Lane, an agent of that company, and to take a lease of the farm from Lane, prayed the court to set aside his deed and subsequent deeds from Lane to H. M. Lipman and from Lipman to the appellant, M. A. Joshel, and to cancel the lease. The defendants to the bill were the appellant, M. A. Joshel, and his wife, Anna Joshel, who answered, denying the alleged false representations and asserting that the appellant was a purchaser in good faith without notice of any fraud and induced by representations of the appellee and upon the advice of an attorney. Proceedings for distress for rent had been instituted by the appellant in the circuit court, and the bill was amended to allege that distress proceedings by agreement were to be adjudicated in this suit. The suits were consolidated, and the appellant alleged that there was due him from the appellee $1200 for rent, together with interest, and that he was entitled to a decree for that amount. The answer also alleged that the appellee had filed in bankruptcy proceedings against the Daniel Hayes Company his claim based on the transaction sought to be set aside and had thereby elected to ratify and confirm the contract. The bill was amended so as to deny

that the appellee had filed or authorized the filing of any claim in bankruptcy. The issues were referred to the master in chancery to take and report the evidence with his conclusions of fact and law. He took the evidence and made his report, to which objections were filed by the appellee. The objections were overruled and the report filed, and it was ordered that the objections should stand as exceptions. The chancellor entered a decree reciting that the exceptions were sustained, finding that the appellant had paid installments of interest and taxes on the farm amounting to $1364.90, for which he should be reimbursed, and setting aside the deeds and lease and decreeing that the appellee was the owner in fee simple of the premises. The appellant and his wife were perpetually enjoined from claiming any right, title or interest in the farm and the costs were taxed against the appellant.

The fraud of the Daniel Hayes Company was proved and not disputed. The appellee first occupied the farm as a tenant of Frederick C. Borman and on July 3, 1914, entered into a contract with Borman to purchase the farm for $16,000. He had made payments on the contract, and in June, 1919, sales agents of the Hayes Company, and Daniel Hayes, Jr., president of the company, came to the farm and proposed a trade for land in California. They represented that the company had a building at 109 North Dearborn street, Chicago, several thousand acres of the best land in California, in the Chowchilla district, a bank and a 100-room hotel at Chowchilla, and some land in Idaho. At their instance he made a trip to California at the expense of the company to examine the land and drove all over it. After his return he went to the office of the company in Chicago and on October 4, 1919, entered into a contract with the company to exchange his equity in the farm for 120 acres of the California land, for which he was to pay $200 per acre. The farm was figured at $150 an acre, or $22,500. Deducting $9000 due to Borman on

the contract of purchase the equity of appellee was $13,500, and the contract recited the receipt of $12,000 cash, and the balance of $1500 for the equity was to be paid to appellee in cash. The contract provided for a mortgage back on the California land for the balance of the purchase price. The appellee assigned to the Hayes Company his contract of purchase with Borman for the farm, and afterward, on November 21, 1919, the company assigned the contract to Louis L. Lane, its agent. When the contract was made a lease was prepared, dated October 3, 1919, signed by appellee, and later by Lane, leasing the farm to appellee from March 1, 1920, to March 1, 1921, at a rental of $1200, payable September 1, 1920. The Hayes Company was indebted to the appellee in the sum of $127 for his expenses on his trip to California and gave him a note dated October 3, 1919, for $1627 to cover that expense and the $1500 above mentioned. Lane made arrangements for obtaining money to pay the balance due Borman by giving a trust deed to Abel L. Lehman, trustee, for $9500, and he, with Myra D. Lane, his wife, executed such a trust deed, which, with the notes secured, was delivered to Borman in payment of the balance due him under the contract with the appellee. Borman and wife conveyed the farm to the appellee for a consideration of $16,000 expressed in the deed, and the appellee, with Ingeberg Nelson, his wife, conveyed the farm to Lane for an expressed consideration of one dollar and other good and valuable considerations. The representations made by the Hayes Company were false and fraudulent. The company never had any interest in the building in Chicago except as a tenant of a suite of rooms. It did not own the land in California, had forfeited a contract of purchase and was insolvent. It agreed with the appellee to deliver to him a deed of the California land within three weeks after the contract was made but never delivered it. In January, 1920, the representatives of the company excused it on the ground that they were having trouble in sur-

veying the land on account of the different numbers on the lots and would have it straightened out and the deed would soon be made.

The defense was that the appellant, M. A. Joshel, was a *bona fide* purchaser of the farm without notice and entitled to the protection which the law affords to such a purchaser. On that question the master reported the making of the contract, deeds and lease already recited and the following further facts: In November, 1919, the appellee told the appellant that he had traded the farm for land in California; that he was well satisfied with the trade; that the man to whom he had traded the farm desired to sell it and he believed the same could be purchased for less than $140 per acre, and that he had entered into a lease with Lane whereby he was to retain the premises for one year, beginning March 1, 1920, at a rental of $1200 per year. In February, 1920, the appellant was solicited by A. L. Carlisle, a real estate agent at Geneva, to purchase the farm, and after negotiation the appellant agreed to purchase it for $17,250. The evidence was that an agent of the Hayes Company had applied to the appellant to buy the farm, and Carlisle wanted the deed made to some other person to avoid any question about his commissions and asked the appellant for the name of someone to whom the deed should run. The appellant gave him the name of H. M. Lipman, and on February 10, 1920, Lane and wife conveyed the farm to Lipman by warranty deed, which was recorded on February 13, 1920. The purchase price was paid by the appellant to Carlisle, the real estate agent, and paid over by him. On February 27, 1920, Lipman executed a quit-claim deed to the appellant, which was recorded on March 2, 1920. These deeds were made subject to the trust deed for $9500 executed by Lane to Lehman. Before taking the title and payment of the purchase price the appellant employed an attorney, who investigated the title and gave an opinion that it was good. The master reported that the ap-

pellant acted in good faith, without notice of any kind or character of the alleged fraudulent transaction between the appellee and Lane or the Hayes Company; that he had good title to the farm; that there was due to him $1200 as rent, together with interest at five per cent from the time when the same was due, and that the appellee had no right, title or interest of any kind or character in or to the farm premises. As conclusions of law the master reported that the appellee was not entitled to have the deed set aside; that the appellant was entitled to recover from the appellee $1200, with interest, and a decree should be entered in accordance with such findings.

The decree sustained exceptions to the master's report but contained no finding of fact, but only that the equities of the cause were with the appellee and a decree should be entered as prayed in the bill of complaint. The master found as a fact that the appellee told the appellant of his trade and his satisfaction with it and that he was occupying the farm under a lease from Lane, and it was a conclusion of fact from the evidence that the appellant had no notice of any kind or character of any fraud in the transaction. Where a decree follows the report of a master with findings of fact they are a part of and support the decree, but the decree in this case was contrary to the report and supported by no finding of any fact different in any particular from the findings of the master. Perhaps the inference is that the chancellor disagreed with the master in the conclusions of law, as to which no exception was necessary. (*Hurd* v. *Goodrich,* 59 Ill. 450; *Hayes* v. *Hammond,* 162 id. 133; *VonPlaten* v. *Winterbotham,* 203 id. 198; *Marlow* v. *Rich,* 252 id. 442.) There was not only no contrary finding of matters of fact by the chancellor, but there is not a word of evidence in the record of any notice to appellant, except such, if any, as would be afforded by possession of the farm. If, as a matter of fact, such possession did not constitute notice of fraud or any matter that would justify set-

ting aside appellee's deed, the appellant was a *bona fide* purchaser for value and entitled to the protection which the law affords to such a purchaser.

Possession of land is notice to all persons dealing with it of whatever rights the one in possession claims, and a purchaser takes subject to such claims provided they are well founded. Possession, however, is notice of such facts, only, as inquiry of the occupant would disclose and that would be the nature of his claims. A purchaser is bound to inquire of one in possession by what right he holds possession and what interest he claims in the premises, and the law declares that the purchaser has constructive notice of all those things which he would have learned respecting the title or claim of the party in possession by inquiry of him. (*Williams* v. *Brown,* 14 Ill. 200; *White* v. *White,* 89 id. 460; *Coari* v. *Olsen,* 91 id. 273; *Ford* v. *Marcall,* 107 id. 136; *Tillotson* v. *Mitchell,* 111 id. 518; *Rock Island and Peoria Railway Co.* v. *Dimick,* 144 id. 628; *German-American Nat. Bank* v. *Martin,* 277 id. 629; *Moore* v. *Machinery Sales Co.* 297 id. 564.) While the purchaser is bound to inquire by what right the occupant holds possession, the fact of possession is notice of the extent and character of the occupant's claim and of nothing else. (*Munn* v. *Burges,* 70 Ill. 604.) Whether the finding of the master that the appellant was informed by the appellee himself that he was satisfied with his trade was true or not, there is no doubt whatever that at the time of the purchase by appellant the appellee had no knowledge of any fraud and could not have given any information of fraud or fraudulent representation. He was not in possession or claiming possession on account of any fraud or any right growing out of a fraud or fraudulent representation. His possession was notice of the character of his possession as a tenant of Lane, and that was the only information the appellant would have received if he had made inquiry. Any inquiry of the appellee would not have revealed any reason for setting aside

the deed to Lane, and this appears from the testimony of
the appellee. He testified that the first time he learned that
the Hayes Company was insolvent was on February 28,
1920, after the purchase by the appellant, when he received
a card saying that the company had gone into bankruptcy
and notifying him of a re-organization, when the company
would be stronger and better than ever. He said that along
in March he signed papers for a re-organization, and the
first time he learned that the Hayes Company was not the
owner of the land in the Chowchilla district bargained to
him was in May or June, 1920, and the first time he learned
that the company never owned the building at 109 North
Dearborn street or that the representations made to him
were false was the last of May or first of June, 1920. The
appellant could not upon inquiry from appellee have learned
the facts which the appellee himself did not know or dis-
cover for a long time afterward, and he was not chargeable
with notice or suspicion of a fraud of which the appellee
had neither notice nor suspicion. Something more than sus-
picion is necessary, but if it could be said now that the fact
that appellant was getting a good bargain ought to have ex-
cited suspicion, he certainly would not be expected to in-
vestigate the title to the office building on Dearborn street
or of the land in California or any other matter as to which
it is alleged that false representations were made. The ap-
pellant was a *bona fide* purchaser of the farm and holds
the legal title, for which he paid without notice of any de-
fect therein, and the court will protect him in his right.

The suit by distress for rent was consolidated with the
suit in equity, and the master reported as a conclusion of
law that appellant was entitled to recover from appellee
$1200, with interest, for rent of the farm. Under the view
taken by the chancellor that appellant was not a *bona fide*
purchaser and that his deed should be set aside the question
concerning rent did not directly arise, but it necessarily fol-
lowed that appellant was not entitled to rent. The facts

concerning that issue were as follows: On October 3, 1919, Louis L. Lane leased the farm to appellee from March 1, 1920, to March 1, 1921, at a rental of $1200, payable on September 1, 1920. In adjusting the amounts between the California land and the farm it was found that the Hayes Company was required to pay appellee a balance of $1500 in cash and that it also owed appellee $127 for his expenses in going to California to look at the land. On the same day the lease was made the Hayes Company gave appellee a promissory note for $1627, payable September 1, 1920, with seven per cent interest, to cover these items. On the back of that note was an indorsement signed by appellee giving credit for $1200 for rent on the lease due from appellee September 1, 1920. That indorsement was canceled by lines of red ink drawn through it, which, without explanation, indicated that the credit was withdrawn or set aside in some way. In his testimony appellee explained it in this way: He said that the note was delivered to him by the secretary of the Hayes Company about a week after its date; that he took the note to the Stewart Bank, at St. Charles, and asked the bank to take it and surrender one of his notes; that the banker told him he had better have the Hayes Company give him another note for $427; that he went to Courtner, the secretary of the company, with the note, and Courtner said the company would give him a new note for $427; that Courtner said he would fix it and draw lines across the indorsement, and it would be the same thing even though the lines were on it; and that Courtner said the other man was not there, so he could not give the new note, but would let him have $1200 rent on the note and send the balance and the interest to the bank at St. Charles.

The law is that the execution of a deed of leased land operates, in law, to convey rents accruing thereafter, and this is not questioned. The deed to appellant on Febru-27, 1920, with the assignment of the lease by Lane to appellant on February 10, 1920, gave appellant the right to

any rent that would accrue, but the rent had been paid by the arrangement between appellee and the Hayes Company, for which Lane was acting as agent. The finding of the master that appellant was entitled to the rent was contrary to the evidence.

The decree is reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the report of the master, except as to the recovery of the rent reserved in the lease, with interest thereon.

*Reversed and remanded, with directions.*

---

(No. 14870.—Reversed and remanded.)
OTTO WIEDERHOLD, Appellant, *vs.* ALIDA MAY WIEDER-HOLD, Appellee.

*Opinion filed December 19, 1922.*