ADKINS v. ARSHT et al.
Civil Action No. 253–D.

District Court, E. D. Illinois.
Aug. 11, 1943.

762

C. E. Feirich, of Carbondale, Ill., J. G. Van Keuren, of DuQuoin, Ill., Essington, Beebe & Pratt, of Chicago, Ill., and Roy C. Martin and Carter Harrison, both of Benton, Ill., for C. W. & F. Coal Co.

Hickman & Hickman, of Benton, Ill., for McKemie heirs, defendants in counter-claim.

Frank E. Trobaugh and Stephen E. Brondos, both of West Frankfort, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff seeks to enjoin defendants from drilling an oil well on some five acres of land in Franklin County and to cancel an adverse oil lease. Plaintiff avers and the proof discloses that the land was originally owned in fee simple by Lou McKemie; that on September 18, 1926, she and Thomas McKemie, her husband, conveyed the property by warranty deed to August Chaniot, "excepting all the coal, oil, gas and other minerals underlying same together with certain mining privileges, heretofore conveyed"; that previous to this conveyance, the coal under the land had been conveyed to the Benton Coal Company; that Lou McKemie died November 17, 1936; that on June 27, 1940, Thomas McKemie and the heirs of Lou McKemie executed and delivered to plaintiff an oil and gas lease covering the property; that, subsequently, on April 4, 1941, August Chaniot and his wife executed and delivered an oil and gas lease on the property to Sam Arsht and Joe Upchurch. At that time plaintiff had brought into production an oil well. Arsht and Upchurch claim the right to the oil and gas, by virtue of this lease from Chaniot, and to remove the cloud of this claim plaintiff instituted suit.

Defendants, in a counterclaim, seek to reform the deed to Chaniot by striking out the exception of "oil, gas and other minerals," thereby making the deed read "excepting all the coal underlying same together with certain mining privileges, heretofore conveyed."

In 1926, Mrs. McKemie agreed to sell Chaniot the property. The proposed deed, the usual printed form, with the names of the parties and description of the property typed in, was shown to Chaniot, who approved it. The instrument was then taken to a reputable lawyer and the clause excepting coal, oil, gas and other minerals inserted in pen and ink by him. The deed was then executed and, upon payment of the consideration, delivered to Chaniot, who had it recorded. Chaniot testified that it was agreed between him and the McKemies that all the interest of the latter was to be conveyed to him, that is, all title except that to the coal, which had been previously conveyed. He further testified that at no time after the deed was executed and delivered to him did he look at it, and that he did not know the terms of the exception until April 4, 1941 when he leased to Arsht and Upchurch, after a lapse of approximately fourteen and one-half years.

Aside from the question of whether the facts proved are sufficient to justify a court of equity in ordering reformation, I believe that, even if there were an honest mistake, Chaniot was guilty of laches barring him and those claiming under him of any right to have the deed reformed.

Though we assume the facts most favorable to defendants, that is, that Chaniot, at the time he accepted the deed, did not see the changes made in longhand after he first saw it but prior to its actual delivery to him, it can hardly be said that he acted as a prudent person. When he first saw the deed, it had not been signed and contained no provision excepting even coal. Apparently it was taken to a lawyer by the McKemies for the purpose of seeing that it contained the proper exception. Yet when it was delivered to him, duly executed, Chaniot exhibited a surprising lack of interest in determining whether it was properly executed, whether a proper exception had been included, or whether any change of language had been made since his first view. No reasonably careful person would have failed to do any of these things. The most superficial examination would have revealed the exception, including oil, gas and other minerals, as well as coal, standing out and apart from the typing in hand-writing in a legible hand. There is nothing to show that Chaniot could not read or that he was incapable of understanding the provision.

This carelessness, the lapse of time, the subsequent greatly increased value of the property because of the discovery of oil, the

change of position of plaintiff in purchasing and developing the lease, in view of the death of the owner grantor and the age and failing health and mind of the husband grantor, constitute laches barring defendants of any relief.

■ In Chicago, Wilmington & Franklin Coal Co. v. Jilek, D.C., 42 F.Supp. 200, 201, the deeds conveyed "all the coal, oil, gas and other minerals" underlying the property in question. An intervenor sought to reform them by eliminating "oil, gas and other minerals" from the granting clause. One witness testified that the intention was to grant only the coal, that when the deeds were presented for execution, the grantors protested the inclusion of "oil, gas and other minerals" and executed the instruments only on the promise of the grantee that he would delete such phrase when he reached his office. In discussing the problem of laches, the grantors asserting these facts some years later, I said:

"A further reason exists why even, if there were any truth in the testimony, the relief could not be granted. The deeds were made in July, 1905, and recorded shortly thereafter. The titles conveyed stood unchallenged for thirty-six years. All the parties to the transaction other than Robert Q. Simpson are dead. The testimony of the alleged witness, the father, mother and the grantee cannot be offered to the court. The property increased in value in 1941. Immediately the claim appeared. As a matter of public policy such laches, combined with the death of the parties and witnesses, bars relief. This results because, under such circumstances, the court is unable to render substantial justice between the parties; no element of estoppel is essential. Lauer v. Kunz, 260 Ill. 584, 103 N.E. 550; Dustin v. Brown, 297 Ill. 499, 130 N.E. 859; Vermilion County Home v. Varner, 192 Ill. 594, 61 N.E. 830; Dempster v. Rosehill Cemetery Co., 206 Ill. 261, 68 N.E. 1070; Klee v. Chicago Trust Co., 365 Ill. 354, 6 N.E.2d 442; Ferns v. Chapman, 211 Ill. 597, 71 N.E. 1106; Thomas v. Van Meter, 164 Ill. 304, 45 N.E. 405. The doctrine is frequently applied where the property has increased in value and where parties to the transaction and witnesses are dead. Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719; Abraham v. Ordway, 158 U.S. 416, 15 S.Ct. 894, 39 L. Ed. 1036; Underwood v. Dugan, 139 U.S. 380, 11 S.Ct. 618, 35 L.Ed. 197. It has been held peculiarly applicable to oil litigation because of the fluctuating character of the subject matter and the great changes in value which frequently occur in a short space of time. Carlock v. Carlock, 249 Ill. 330, 94 N.E. 507; Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Hayward v. Eliot Nat. Bank, 96 U.S. 611, 24 L.Ed. 855; Taylor v. Salt Creek Oil Co., 8 Cir., 285 F. 532; Medallion Oil Co. v. Hinckley, 9 Cir., 92 F.2d 155; Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214.

"In all such cases it is the duty of the parties complaining to inform themselves and to act; mere proof that they were ignorant of the facts does not wipe out the vice of resulting unsettled overturned titles. Public order and tranquility demand that they acquaint themselves with their rights and act. Failing to do so, they are barred. Wetzel v. Minnesota Ry. Transfer Co., 169 U.S. 237, 18 S.Ct. 307, 42 L.Ed. 730; Johnston v. Standard Min. Co., 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480."

The principles enunciated are clearly applicable.

■ The counterclaim for reformation must be denied for another impelling reason. Courts proceed with great care in reforming a written instrument, since such action will change the rights of parties which have stood theretofore unchallenged. Over-turning rights, unsettling titles are encouraged only when they are absolutely necessary to do equity. Thus, in Tope v. Tope, 370 Ill. 187, at 190, 18 N.E.2d 229, at 230, the court said:

"The important question for decision, therefore, is to determine whether, in this case, there was sufficient evidence to reform the deed after the lapse of over fifty years. * * *

"The evidence required to reform a written instrument must leave no reasonable doubt as to the mutual intention of the parties. A preponderance of the evidence is not sufficient. The rule has been expressed in many ways. In all cases there should be satisfactory evidence before a deed will be reformed."

This court in Chicago, Wilmington & Franklin Coal Company v. Jilek, D.C., 42 F. Supp. 200, applied the Tope case in refusing to reform the deeds involved there.

In Christ v. Rake, 287 Ill. 619, at 622, 122 N.E. 854, at 855, the court said: "Where contracting parties have reduced their agreement to writing, it is presumed to express their mutual intention, and that pre-

sumption does not yield to any claim of a different intention, unless the evidence of a mutual mistake is of a strong and convincing character. A written instrument will not be reformed on the ground of mistake, unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability, nor upon a mere preponderance of the evidence, but only upon evidence amounting to a certainty."

■ The evidence of a common, mutual mistake of fact here is not so clear and convincing as to justify reformation.

■■ Defendants claim that the word "excepting" evinces that Mrs. McKemie intended to convey all her interests and to except only that not owned by her, citing McCall v. Middleton, 304 Ill. 408, 411, 136 N.E. 723. In that case the court held a deed employing the words "saving and reserving unto the grantors the coal underlying said premises" should be reformed to read "excepting the coal underlying said premises." The reason for the decision was that defendants in error had never owned the coal and strictly speaking could not reserve rights they never had. From this, defendants argue that the word "excepting" can mean only that the grantor excepts from the grant, lands or interests not belonging to the grantor. Irrespective of their exact meanings, the words "exception" and "reservation" have been used indiscriminately as synonymous in meaning and courts quite generally have held that the legal intent will be determined, not by the word used, but by the purport indicated in the entire grant. 15 Words and Phrases, Perm.Ed., p. 458. Here, there is no conclusive showing that the McKemies intended the literal meaning of "except" to apply. Even if "except" be given its strict technical meaning, it is obvious that it was used to retain the oil and gas interests in Mrs. McKemie as well as to protect her under the warranty as to the coal rights which had been previously conveyed. The commonly recognized difference between a reservation and an exception is that the former creates or reserves something out of the thing granted, while an exception removes from the grant something already in existence. 15 Words and Phrases, Perm. Ed., p. 450; Bullard v. Suedmeier, 291 Ill. 400, 404, 126 N.E. 117; 1 Bouv.Law Dict.,

Rawle's Third Rev., p. 1108. Obviously the oil and gas existed and were a portion of the entire fee, and it was entirely proper to retain them by excepting them from the grant.

■ Determination of whether plaintiff is a bona fide purchaser without notice, is not necessary to this decision. But, assuming it essential, there is no question as to the fact. Plaintiff, in examining the county records, found that Chaniot owned only the surface and that Mrs. McKemie had retained all the oil, gas and other minerals in the land except the coal. There was nothing of record to put plaintiff on notice of any claim of oil and gas by Chaniot or anyone else, and he had a right to assume that the recorded title to the oil and gas in McKemie was superior to any unrecorded unknown secret claims. Booker v. Booker, 208 Ill. 529, 539, 70 N.E. 709, 100 Am.St.Rep. 250; St. John v. Conger, 40 Ill. 535.

■ A deed will not be reformed against a bona fide purchaser for value without notice, Sickmon v. Wood, 69 Ill. 329; Nelson v. Joshel, 305 Ill. 420, 426, 137 N.E. 389; Harms v. Coryell, 177 Ill. 496, 53 N.E. 87, but will be, under proper facts, when the purchase is not bona fide, that is, where the buyer has actual notice of prior claims, constructive notice from the public records or knowledge of facts sufficient to put a reasonably prudent man on inquiry where such inquiry would have revealed the facts. Nelson v. Joshel, 305 Ill. 420, 137 N.E. 389. Defendants aver that Chaniot's actual possession of the surface was sufficient to put plaintiff on notice of his claim to the oil. However, such possession is referable only to the possessor's recorded title, and is no notice of any claim or equity the person in possession may have, beyond such title. A prospective purchaser may rightfully assume that the possession is based on the recorded rights. See Robertson v. Wheeler, 162 Ill. 566, 44 N.E. 870; Harms v. Coryell, 177 Ill. 496, 53 N.E. 87. Thus, where a person in possession claims under several rights, only one of which is recorded, his possession is notice to the purchaser of the recorded right only. Lance v. Gorman, 136 Pa. 200, 20 A. 792, 20 Am.St.Rep. 914; Ellison v. Torpin, 44 W.Va. 414, 30 So. 183; Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258. It is obvious that the possession of the surface by Chaniot in no way indicated possession of or claim to the oil and gas, when Chan-

iot's recorded title revealed only title to the surface. Chicago, W. & F. Coal Co. v. Herr, D.C., 40 F.Supp. 311, affirmed, 7 Cir., 127 F.2d 1010; Jilek v. Chicago, W. & F. Coal Co., 382 Ill. 241, 47 N.E.2d 96. There is nothing in the facts in the case at bar disclosing that plaintiff was anything but a bona fide purchaser for value.

Chaniot will have judgment against the McKemies giving him title to the surface of the entire five acres. Otherwise the counterclaim is dismissed for want of equity and judgment will enter for plaintiff as prayed.

The foregoing includes my findings of fact and conclusions of law.