Hugh A. FRY et al., Plaintiffs in Error,

v.

W. B. HURST et ux., Defendants in Error.

No. 36532.

Supreme Court of Oklahoma.

Jan. 24, 1956.

Rehearing Denied Feb. 21, 1956.

Hollis Arnett, Mangum, for plaintiffs in error. .

Walter Hubbell, Luther B. Eubanks, Walters, for defendants in error.

DAVISON, Justice.

This is a suit brought by W. B. Hurst and his wife, Jewell Hurst, as plaintiffs, against Hugh A. Fry and his wife, Susan S. Fry, as defendants, to quiet title to the surface of, and to five sixths undivided interest in the oil, gas and other minerals underlying a 201.36 acre tract of land in Greer County, Oklahoma. Upon application of said original defendants, Catherine Kight was made an additional party defendant. Trial was had to the court, resulting in judgment for plaintiffs, from which the

defendants have perfected this appeal. The parties will·be referred to as they appeared in the trial court.

The only issue in the case is whether or not the defendants Fry owned a one third undivided interest in said minerals. The assertion that they did constituted the gist of the answer of the defendant Kight and of the answer and cross-petition of the defendants Fry. They prayed for relief in the alternative—either that a deed from the Frys to Kight, plaintiff's grantor, be determined to contain a reservation of said minerals; or that the same be reformed to effect such reservation which was allegedly the intention of the parties. The facts are simple and brief.

In 1919 the fee title to the property here involved and the surface of an additional forty acres was conveyed to defendants' grantor. ·(The property thus conveyed comprised the fee of 241.36 acres less the oil and gas underlying one specified forty acres.) On February 25, 1941, by general warranty deed, the defendants Fry conveyed to the defendant Kight the entire fee to said 241.36 acres without exception or reservation, except as contained in the habendum clause which provided as follows:

"To Have and To Hold said described premises unto the said party of the second part, her heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature. Except mortgage to Federal Land Bank of Wichita, Kansas, for $2,000.00, balance of principal being $1,500.00. Excepting one third of all Oil and Mineral Rights, undivided. Excepting all taxes including 1940."

On January 30, 1943, the defendant Kight and her husband, by general warranty deed, conveyed to plaintiff, W. B Hurst, the entire fee to said 241.36 acres without exception or reservation other than that, in the habendum clause, it was provided that the covenant of title excepted "unpaid balance on a loan held by the Federal Land Bank of Wichita, Kansas; also except any mineral reservations now on record."

The introduction of the three above described deeds in evidence constituted plaintiff's case in chief. The balance of the evidence in the record consisted of testimony relative to the intention of the parties in the execution of the deed from the defendants Fry to the defendant Kight and testimony aimed at establishing notice on the part of plaintiffs, at the time of the conveyance from Kight to Hurst, that the defendants Fry were claiming a one third interest in the minerals. All parties admitted that the defendant Kight owned a one sixth interest in said minerals by virtue of a reconveyance thereof from the plaintiffs.

In the cases of Echolustee Oil Co. v. Johnston, 153 Okl. 92, 3 P.2d 227, and Rose v. Cook, 207 Okl. 582, 250 P.2d 848, this court established the rule in this jurisdiction which precludes the wording of the Fry-to-Kight deed from being sufficient to constitute a reservation of the minerals. Therefore, all asserted claims or rights of the defendants depend upon their right to have said deed reformed. To establish such right to relief, the burden was upon them to prove first, the intent of the parties at the time of the execution of said deed; second, notice to Hurst, at the time of his conveyance from Kight, of the claims being made by Fry to the minerals. A failure to prove either of those two points was fatal to defendants' position. The question of notice to Hurst of any such claim is determinative of the issues herein and will be first considered.

On the part of the defendants, the proof consisted, principally, of a copy of plaintiff's attorneys' opinion of the title about the time the property was purchased. Said opinion was that of the attorney who, in this case, represents all the defendants. The attorney appeared as a witness for the defendants and testified that he had, as attorney for Hurst, examined the abstract of title when Hurst purchased the 241 acres; that, in addition to the opinion on the abstract, he had written a letter to Hurst stating that,

"You will observe that on the SW 40 of the SE¼ of Section 35, all of the mineral rights have been reserved; and one-third of all minerals have been reserved to all the rest of it * * *

"This, barring the duplication of the first forty, amounts to one-half of all the mineral rights, which are now reserved to former grantors. If, in addition to this, your grantor is to reserve any minerals, etc."

With reference to the same proposition, the opinion on the abstract, written by said witness stated,

"*Hugh A. Fry* and Susan S. Fry deed said property by warranty deed to Catherine Kight, reserving a *one-third* interest in all oil and mineral rights, said deed being dated February 25, 1941."

The only other evidence, on behalf of defendant relative to any notice to plaintiffs of a claim of Frys to the minerals, was the testimony of the defendant Kight. At the time of the trial in 1954, she was an old lady, 83 years of age. She testified that her husband was a real estate broker and handled the entire transaction with the plaintiffs; that she knew none of the details; did not know if she furnished an abstract; that the entire transaction was handled by correspondence and that all letters were written by her husband; that she did not read all of the letters received from plaintiff; that she didn't know what the final contract with plaintiff provided; that she knew of no detail of the transaction except that the Frys were to retain one third of the minerals; that she read one of plaintiff's letters wherein he stated that he wasn't interested in the minerals and wanted the land for pasture and agricultural purposes only.

Plaintiff, W. B. Hurst testified, in his own behalf, to the effect that he did get the attorney's opinion and letter; that he then sought the advice of other attorneys whose opinion was that the Fry-to-Kight deed did not constitute a reservation of any minerals; that it was upon this latter advice that he acted in purchasing the property; that he made no investigation as to any mineral interest claimed by the Frys. He also testified concerning his negotiations with the defendant Kight. His testimony on this point was that he had in-

formed the Kights that he was not necessarily interested in the minerals; that he would have purchased the surface without the minerals if proper reduction had been made in the purchase price; that he would not have purchased the surface only at the same price; that no adjustment was made in the price and he had no other idea than that he was to receive the surface and all minerals to the realty here involved and to receive the surface only of the additional forty acres but that he was to reconvey to Kight a one-sixth of the minerals so received. The deed to him from the Kights is in harmony with that testimony. It provided an exception in the warranty only as to "any mineral reservation now on record." As above pointed out, there was no mineral reservation in the Fry-to-Kight deed. Therefore, there was no mineral reservation on record other than as to all the minerals underlying the forty acres which is not here involved.

Upon the evidence the trial court found all the issues in favor of the plaintiff and further specifically found that the Fry-to-Kight deed and the Kight-to-Hurst deed conveyed all the minerals underlying the lands herein. The court further found that the defendants were not entitled to have the Fry-to-Kight deed reformed.

Under such circumstances, it is not necessary to here determine whether or not the evidence on behalf of defendants, if uncontradicted, would have been sufficient to entitle them to the relief sought. The evidence in its entirety was at most conflicting and the judgment of the trial court was not against the clear weight thereof. This court on appeal will not disturb the judgment of the trial court in a suit of equitable cognizance where the same is not against the clear weight of the evidence.

The judgment is affirmed.

JOHNSON, C. J., and WELCH, DAVISON, HALLEY and HUNT, JJ., concur.

WILLIAMS, V. C. J., and BLACK-BIRD, J., dissent.

BLACKBIRD, Justice (dissenting).

I respectfully dissent to the opinion of the majority. They, like the trial court appears to have done, have become confused as to the issues in this type of case, and have allowed the controlling issue, as between Mr. and Mrs. Hurst and Mr. and Mrs. Fry, to be determined, or overshadowed, by considerations which have little, or no, bearing upon it.

Surely all will agree that, where, through some mistake, inadvertence or ineptness, the language of a deed delivered by the vendor to the vendee of real estate is insufficient to adequately or correctly describe the particular interest or estate therein sought to be conveyed, the parties thereto may invoke the power of a court of equitable cognizance to reform the instrument so that it does effect such a conveyance as said parties intended and agreed upon. If the cases of Echolustee Oil Co. v. Johnston, 153 Okl. 92, 3 P.2d 227, and Rose v. Cook, 207 Okl. 582, 250 P.2d 848, cited in the majority, have any relevancy or bearing upon this law suit at all, it is merely to show that the language in the Fry-Kight deed was not legally adequate to carry out the conveyance, or reservation, the parties to it agreed on (which, in effect, *is what the Frys conceded when they asked the court to reform it*). And such court should grant such relief even where all of the property has purportedly been deeded to a subsequent ostensible purchaser, if, before the latter transaction was consummated and said subsequent deed delivered, the subsequent purchaser and grantee had notice of facts sufficient to put him on inquiry as to whether or not some one other than his vendor claims a portion of the property. 76 C.J.S., Reformation of Instruments, § 54. All courts recognize this. See, for example, Eakers v. Clopton, 199 Okl. 99, 184 P.2d 247, 248, 173 A.L.R. 309, and Adkins v. Arsht, D.C.E.D.Ill., 50 F.Supp. 761. In the first cited case, we held:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent

man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with actual notice he would have received if he had made it."

See the same rule worded differently and quoted from 39 Cyc. 1713, in Luker v. Moffett, 327 Mo. 929, 38 S.W.2d 1037, 1041. What then, according to the evidence and the law applicable thereto, was the situation of W. B. Hurst when in the latter part of 1942 or early part of 1943, he agreed to purchase from the Kights, subject to their being able to furnish merchantable title thereto, the entire fee in this 241.36 acres of land, less—as he claims—only the mineral rights in one specified 40 acres not involved herein, and an undivided ⅛th interest in the remaining 201.36-acre mineral estate which Mrs. Kight was to retain? If, as Hurst testified in the trial court, as opposed to the Frys' evidence, including the testimony of Mrs. Kight, his agreement with the Kights contemplated their conveyance to him of the entire 201.36 acres of minerals (as well as the surface of the additional 40 acres) and he found that they did not own all of those minerals, then he was under no obligation to go through with the deal. Upon examination of the abstract, his attorney called Hurst's attention to the "Excepting" sentence in the Fry-Kight deed, and indicated that in his opinion, because of said deed, his prospective vendors did not own a full 3/3rds interest in those minerals. On the basis of these undisputed facts, the true question in the case was not whether this attorney was *right,* and whether said language *was* sufficient to effect a valid reservation in the Frys under the law and previous decisions of this Court, such as Echolustee Oil Co. v. Johnston and Rose v. Cook, supra,—but rather: *Was such language sufficient to provoke an inquiry by Hurst as to just what the parties to the Fry-Kight deed meant, or intended, by inserting, or having inserted, that language in the deed?* That the majority, and the trial judge (who made no finding as to whether or not Hurst was a

bona fide purchaser, or otherwise evidenced any recognition that this issue was in the case) have erred in pitching their decisions on the answer to the first stated question, rather than the latter one is demonstrated by the following excerpt from Wood v. Carpenter, 101 U.S. 135, 141, 25 L.Ed. 807, quoted in Daniel v. Tolon, 53 Okl. 666, 157 P. 756, 763, 4 A.L.R. 704, as follows:

"'Whatever is notice enough to *excite attention* and put the party on his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead to a fact, he shall be deemed conversant of it.'" (Emphasis ours.)

See also Adkins v. Arsht, supra; Shell Petroleum Corp. v. Corn, 10 Cir., 54 F.2d 766; Annotations, 102 A.L.R. 825, 44 A.L.R. 78; 76 C.J.S., Reformation of Instruments, § 59. When Hurst's attention was called, by his attorney's title opinion, to the "Excepting" sentence in the Fry-Kight deed and the possibility (to say the least) that the sentence might indicate the parties thereto intended that their transaction and conveyance covered only ⅔rd of the minerals under the 201.36-acre tract, what did Hurst do? Did he ask Mrs. Kight about that, or contact the Frys about it? In this connection notice what the Court says concerning the duty of Mr. Snyder in McBride v. McBride, 250 Mich. 601, 230 N.W. 933, 934, 935, and of J. R. Catalina in Luker v. Moffett, 327 Mo. 929, 38 S.W. 2d 1037, to inquire as to the actual facts. If he did, the record does not show it. If he had asked either Mr. or Mrs. Kight about it, they might have shown him the original, or a copy, of the contract which Mr. Kight, previous to obtaining the deed in Mrs. Kight's name, entered into with the Frys on February 13, 1941, to buy the land, which said contract establishes beyond any doubt that the parties' transaction specifically contemplated the Frys' *reservation* of ⅓rd of the royalty under the 201.36-acre tract (a very important bit of evidence the majority opinion does not mention). But Hurst did not do this. Instead, he chose to ignore the warning given him by his first attorney, and to make no inquiry

or investigation, and as may possibly be inferred from his testimony, to go to an attorney who would tell him what he wanted to hear, namely, that the language used was insufficient at law, and under the decisions of this Court, to effect a reservation. His going to this last attorney (if it may be called "an inquiry" or "investigation") was directed merely to the obtaining of an additional opinion on the legal efficacy for reservation purposes, of the language used in the Fry-Kight deed, rather than being directed to ascertaining what the parties to said deed in fact intended by that language. In this, he was guilty of bad faith. See what was said concerning "bad faith" and the meaning of "actual notice" in the quotations from Cooper v. Flesner, 24 Okl. 47, 103 P. 1016, 23 L.R.A.,N.S., 1180, appearing in Daniel v. Tolon, in addition to the McBride and Luker cases, supra.

The trial court, as well as the majority of this Court, should have recognized that the only real question in this case, as between the quieting of their title sought by the Hursts, and the reformation of the 1941 deed sought by the Frys, was whether or not Hurst was an innocent or bona fide purchaser for value, and that the answer to this question lay in determining, *not the adequacy of the language of the 1941 deed to effect a reservation, but its adequacy as "an inquiry-provoker."* Assuming, as the trial court and the majority held, that said language was insufficient for the former, there was ample evidence to show it was adequate as the latter. The trial court should have determined whether or not the calling of Hurst's attention to this language imparted to him a fact that would have caused a normally prudent or cautious purchaser to have made inquiry as to the true ownership of the one-third mineral interest specified therein. It is immaterial that the language of the deed may, or may not (in view of the law or court decisions on such matters) have been inadequate to carry out the intention of the parties to the Fry-Kight deed. Ordinarily, a trial court's judgment may be considered a finding of every material issue necessary to support it, but where, as here, it is obvious that the trial court (as has the majority) based

its decision—not upon the principal issue—but upon a very different one, which, under the law, should not have controlled, then the rule, ordinarily applicable, does not apply. Where it is obvious that a trial judge has not considered an issue necessarily involved in his judgment, the cause will be remanded for a new trial on the same basis as it will where he has erroneously determined such issue against the weight of the evidence. See Schafer v. Midland Hotel Co., 41 Okl. 111, 137 P. 664 (a "reformation" case). If the present judgment, upon careful analysis of it, can be deemed a determination on the question of notice (which it obviously cannot) then it is clearly against the weight of the evidence. If the trial court had found that the wording of the Fry-Kight deed was sufficient as "actual notice" (under the legal definition of that term hereinbefore cited), then, as the undisputed evidence showed that Hurst did not make proper inquiry pursuant to such notice, under the rule hereinbefore quoted from Bakers v. Clopton, supra, he had, or was charged with, actual notice and could not have been a bona fide or innocent purchaser; and therefore possessed no right constituting an obstacle to granting the Frys the relief of reformation and quieting of their title against him they sought by their cross petition. See Pearce v. Osterman, 343 Ill. 175, 175 N.E. 416, in addition to the cases cited supra. As the trial court's judgment did not decide that question, but instead based its judgment on a collateral one, namely, the inadequacy of the 1941 deed to effect a reservation in the Frys, this case should have been reversed with directions to the trial court to set aside its order overruling defendant Fry's motion for a new trial, and to enter an order granting it. The error here may be due to erroneously concluding that *because the language of a deed may be insufficient at law to effect a reservation,* it is, by the same token, insufficient to put a prospective purchaser on inquiry. The annotated cases, supra, such as McBride v. McBride, and others, such as Shell Petroleum Corp. v. Corn, supra, demonstrate the fallacy of such a conclusion by showing that even if the deed contained no questionable language—

558

was a general warranty deed in all respects, with *nothing* therein, which, by any stretch of any one's imagination, might be called a reservation—still, if a prospective purchaser receives information, by word of mouth, or in some other manner, of claims adverse to those of his vendor sufficient to put him on inquiry, he cannot be considered a bona fide purchaser. In the Shell Petroleum Corp. case, a Mr. Buffington had, for many years, owned a tract of land containing 36.2 acres. In 1911, by warranty deed, he conveyed a 2.7-acre strip of it to Midland Valley R. R. Co., for a right-of-way. Apparently, unbeknown to Buffington such conveyance, under Kansas decisions, left in him title to the minerals under this small strip. See cases cited in Midland Valley R. Co. v. Sutter, 8 Cir., 28 F.2d 163, 164. In 1923, Buffington sold a lease on the remaining 33.5 acres to one Barnes, which lease purported to exclude the 2.7-acre tract therefrom with the following provision therein contained:

"Except that part of Out Lot 9 West Division heretofore deeded to * * * Midland Valley Railroad Co., for right-of-way * * *."

Later Shell Petroleum Corporation bought an assignment of said lease through its agent, Schoenfelt, who was informed by Barnes, before his execution of the assignment, that it didn't include the right-of-way. In the litigation which followed, however, Shell Petroleum Corporation, the plaintiff, took the position that the lease covered the entire 36.2 acres and that the "excepting" provision therein contained was not sufficient to exclude therefrom the right-of-way strip. The court upheld this position as follows, 54 F.2d at page 769:

"The words used by the parties in undertaking to except the 2.7 acres did not accomplish the purpose. Following a long line of applicable decisions which are based on principles of public policy, it has been conclusively determined that the words used in the 1923 lease conveyed the mineral rights under the 2.7-acre tract. (Citing cases.)"

*But the Court concluded as follows:*

"We therefore conclude that, as between Buffington and Barnes, the lease should be reformed. Reformation cannot be had, however, against one who purchases for value in ignorance of the mistake and in reliance upon the terms of the lease. Is the plaintiff such an innocent purchaser? Knowledge of facts or circumstances which would put a person of ordinary prudence upon inquiry is knowledge of such facts as reasonable inquiry would disclose. Mathis v. Hemingway, 8 Cir., 24 F.2d 951, 956. The plaintiff is not an innocent purchaser. Before it acquired the lease, it was advised that it did not cover the 2.7 acres. It knew, therefore, that the parties had made a mistake in reducing their agreement to writing. The plaintiff bought and paid for 33.5 acres only; when it saw that the lease covered 36.2 acres, a mistake was apparent."

If we substitute "the Frys and Mrs. Kight" in the first two lines of the above quotation, what is there said, applies just as well to the present case as it does to the one it directly concerns. That decision correctly demonstrates the principal error the trial court and the majority have fallen into.

Contrary to what one would think from noting that the majority opinion's affirmance is ostensibly based on what it represents as the "clear weight of the evidence", there is no conflict in the evidence as to the facts which the Frys asserted put Hurst on inquiry as to their claim of interest in the minerals under the 201.36 acres. As shown in said opinion, Hurst admitted that he received his first title attorney's opinion and letter indicating that (in his opinion), Mrs. Kight did not own all 3/3rds of said mineral interest. If his testimony was in conflict with any evidence offered by his adversaries, it was pertinent only to what representations were made to him by Mrs. Kight's husband when the latter sold him the land; but, tended to show *no* reason for giving him any relief against the Frys, and for withholding from the reformation and quieting of title they sought against

him. If the majority opinion is accurately read, however, it represents only that Hurst testified—not as to representations Kight made to him—but as to matters only within his own mind—"that he would not have purchased the surface at the same price; * * * he had no other idea than that he was to receive the surface and all minerals * * *". I submit that, as was said of Mrs. Giddings in Thompson v. Giddings, Okl., 276 P.2d 229, Hurst's rights should be determined upon the facts which occurred, rather than upon his testimony as to what he thought, or what ideas he had.

I see no relevancy whatsoever, as regards the principal issue in this case, of the fact mentioned in the majority that the deed from the Kights to Hurst "provided an exception in the warranty only as to 'any mineral reservation now on record'." The execution of this deed did not occur until after Hurst had learned how the Fry-Kight deed was drawn. No type of deed he could have subsequently obtained from the Kights was capable of erasing, or obviating, that knowledge, nor was material to the question of notice under the facts in this case.

The patent error in the majority's affirmance of the trial court's judgment on the specious ground that said judgment, as to the question of Hurst's notice and bona fides, is "not against the clear weight of the evidence", is revealed not only by the fact that the trial judge made no finding on this question (as the majority would lead one to believe), but because it upholds him in excluding as to Hurst, the uncontradicted evidence on behalf of the defendants, Frys and Mrs. Kight, showing the purpose of the Fry-Kight deed, and the intention of the parties thereto, was that said deed should reserve an undivided ⅓rd mineral interest in the Frys. As hereinbefore indicated, such evidence was inadmissible against Hurst *only in the event he was a bona fide purchaser without notice.* A thorough examination of the record indicates that, from the beginning of the trial, the trial judge must have *assumed* that Hurst was a bona fide purchaser (just as the majority has *in reality* done) because the language of the Fry-Kight deed was not sufficient to effect a reservation. Appar-

ently his rulings on the evidence referred to were influenced by this idea. As demonstrated, they were error. This case should have been remanded for a new trial.